WALKER *v.* INTERNATIONAL PAPER COMPANY

No. 40381 February 4, 1957 92 So. 2d 445

*Jackson & Ross,* Jackson; *Niels F. Hertz, Jr.,* New Orleans, Louisiana, for appellant.

*Gwin & Kuehnle,* Natchez, for appellee.

ETHRIDGE, J.

The issue is whether there is substantial evidence to support the finding of the Workmen's Compensation Commission that claimant did not unreasonably refuse to submit to surgery for a herniated, intervertebral disc, which admittedly arose out of and in the course of his employment.

Two sections of the Workmen's Compensation Act are involved. Section 7 (a), which is Code 1942, Section 6998-08 (a), provides in part: "If at any time during such period the employee unreasonably refuses to submit to medical or surgical treatment, the commission shall, by order, suspend the payment of further compensation during such time as such refusal continues, and no compensation shall be paid at any time during the period of such suspension."

Section 13 (c), which is Code 1942, Section 6998-19 (c), states: "Upon making the first payment and upon suspension of payment for any cause, the employer shall immediately notify the commission in accordance with a

form prescribed by the commission, that payment of compensation has begun or has been suspended, as the case may be. Provided, however, that no suspension in payments of compensation shall be made for refusing to submit to medical or surgical treatment until the reasonableness of such request or refusal has been determined by the commission, and a written order suspending payment issued."

1.

Appellant Floyd Walker was employed by appellee International Paper Company in Natchez. On July 1, 1954, while unloading a truck Walker was struck in the back by a piece of pulpwood which fell from a sling. The employer admits that the injury arose out of and in the course of employment. It is undisputed that the resulting injury is a herniated, intervertebral disc. Walker was paid compensation benefits from the time of injury July 1, 1954, until May 20, 1955, for a temporary total disability. On April 6, 1955, the company wrote a letter to the Commission advising that several doctors had been treating and examining claimant, and that on March 28, 1955, claimant returned to work with a release from Dr. D. H. Mutziger; that claimant worked one shift and reported he could not continue to work; that Dr. T. H. Blake, an orthopedic surgeon of Jackson, had recommended surgery and, after tender, Walker had refused the same. The company requested the Commission to order a suspension of compensation payments during the period of refusal of surgery. The Commission set a hearing on this motion for May 20, 1955, at the Adams County Courthouse in Natchez. The employer was present for it, but claimant failed to appear. So on May 25, 1955, the hearing officer, Commissioner Allred, signed an order suspending compensation payments under Section 7 (a) of the Act.

On May 31, 1955, claimant by his counsel filed a motion to vacate the order of May 25, 1955, suspending

payments of compensation, and a Form B-11, being a notice to controvert the issues. On August 19, 1955, a hearing was held on these matters.

Walker testified that he has not been able to do any kind of work since the injury. He cannot stoop or drive a car. His right leg is also affected, and he walks with a limp and the aid of a walking cane. He wears a back-brace, and frequently has to take opiates to relieve the pain. Dr. T. H. Blake told him that he might be able to do some kind of light work, not involving lifting, so he tried at the State Employment Office and elsewhere to get a job, but was unsuccessful. He has a wife and two children. His wife had to start working to support the family, and it was necessary for him to borrow money on his house to help pay living expenses.

Walker is a Negro man with a fifth grade education and no training in any type of work except physical labor. He said he was not willing to undergo surgery at the present time. He is "scared of that back operation", having known two boys who had it and who were paralyzed from the waist down. Dr. Blake advised that he needed an operation, but naturally would not guarantee it would be successful. Walker does not think he is unreasonably refusing medical treatment. He has conscientiously followed all other directions of the several doctors who have treated him. He agreed that the physicians know better about it than he, but he said it "ain't their back." He does not want to have the operation if he can possibly avoid it; it would be the last thing he would do. At the time he was using the brace on his back, sleeping on a hard bed, using a heat lamp, rubbing alcohol and opiates. He wanted to exhaust that treatment before doing anything else. He stated several times that he was "just scared of the operation." He said "I hates it, I wish it was any other part of my body."

Dr. J. Gordon Dees is a general surgeon of Jackson. He examined appellant on June 14, 1955, and diagnosed

his ailment as a "ruptured" disc or herniated nucleus pulposus. It occurred in the ligaments which fasten the vertebrae together. Pressure on the nerves emanating from the spinal cord results in considerable pain. It is a severe handicap which is completely disabling. Dr. Dees does not think appellant will ever be able to go back to work in the condition he was in when he examined him, and could not do any type of work at that time. Claimant's history reflects he is growing progressively worse. He places the disc between the fourth and fifth lumbar vertebrae. Dr. Dees tsetified that surgery usually is very successful in a large percentage of these cases, and the probability is that after an operation appellant could do the work he did before. On the other hand, there is a possibility that appellant would continue to be totally disabled or he could die on the operating table, because in surgery of this nature the mortality rate runs between one to one and one-half percent, but he did not think the operation any more serious than an appendectomy. A patient's fear of an operation affects his surgical risk. Between 75-80 percent of disc surgery cases return to their former occupations. After the operation, claimant might continue to have pain in his back, or a portion of the spine might be stiffened. Nine-tenths of such surgery cases have some degree of limited motion, but not sufficient to interfere with the patient performing his usual occupation. Claimant will continue to have trouble with his back unless he has surgery. He recommends an operation. Results in the twenty-five percent of disc operative cases which are not successful vary in the degrees of disability. Dr. Dees estimated claimant's disability at twenty-five percent, but he thought it could be reduced from zero to five percent by surgery. In his opinion an operation for claimant's trouble would probably be successful.

Dr. T. H. Blake examined Walker on several occasions. He diagnosed the trouble as a herniated intervertebral

disc, between the last vertebra and the sacrum, in the lowest part of the back. He recommends an operation, and estimates a successful disc operation would leave appellant with about a ten percent permanent disability. In about ninety percent of such operations satisfactory results are obtained, with ability to return to gainful occupation and some modest degree of disability. The operation is tedious but not dangerous. Asked whether he thought appellant's refusal of surgery was unreasonable, Dr. Blake replied that this was purely a personal matter. He admitted there would be some chance of fatality, but "I have never lost any." Approximately ten percent have some continued difficulty in varying degrees. He thinks claimant would have an even chance for no disability after surgery.

The attorney-referee found that Walker's injury arose out of and in the course of his employment; that he had reached maximum medical recovery without surgery; has sustained a permanent partial disability and suffered a loss in wage earning capacity from the injury. The attorney-referee ordered appellee to pay appellant permanent partial disability benefits per week, of $16.53, from February 24, 1955, subject to maximum limitations provided by the Act. He necessarily found that Walker had not unreasonably refused surgery.

The Workmen's Compensation Commission affirmed the attorney-referee except as to the amount of benefits. It found that claimant did not unreasonably refuse medical treatment. It reversed the attorney-referee in part, and held that claimant now has no wage earning capacity, so it awarded benefits of $25 per week. The Commission's order provided that no payments of compensation should be made to claimant from April 6, 1955, the date on which appellee filed the motion to suspend payments, to May 31, 1955, the date upon which appellant controverted the matter. This exclusion was based upon

appellant's default and failure to appear at the hearing of May 20, 1955.

Walker did not appeal from the Commission's order of April 20, 1956. On appeal by International Paper Company, the Circuit Court of Adams County reversed the Commission, and reinstated the order of May 25, 1955, made by Commissioner Allred sitting as a hearing officer, which suspended compensation payments effective May 20, 1955. So the circuit court suspended payment of benefits as of May 20, 1955, under Section 7 (a) of the Act, manifestly on the ground that appellant had unreasonably refused surgery.

2.

Was there substantial evidence to support the finding by the Commission that Walker did not unreasonably refuse to submit to surgery? We think there was.

The general rule is that an injured workman will be denied compensation for such incapacity as results from his unreasonable refusal to submit to medical or surgical treatment. This principle is incorporated in Sections 7 (a) and 13 (c) of the Mississippi Act. In interpreting the word "unreasonable", the courts have uniformly evolved the rule that an injured workman will be denied compensation for incapacity which may be removed or modified by an operation of a simple character, not involving serious suffering or danger.

On the other hand, where the operation is of a major character, involves serious suffering or danger, or is doubtful of success, an injured employee's refusal to submit to such operation is not unreasonable, and the right to compensation is not precluded by such refusal. 58 Am. Jur., Workmen's Compensation, Section 330; Notes, 6 A. L. R. 1260 (1920), 18 A. L. R. 431 (1922), 73 A. L. R. 1303 (1931), 105 A. L. R. 1470 (1936).

10 Schneider, Workmen's Compensation (3rd Ed. 1953), Section 2019, pp. 151-199 discusses in detail the

multitude of cases dealing with this question. Schneider summarizes criteria derived from them as follows: "It is a general rule that when the proposed medical or surgical treatment or operation is reasonable and of a minor character, relatively safe and simple, with no great danger attached thereto, is not exploratory or experimental, and is such to which an ordinarily prudent and reasonable person would submit for his own benefit and comfort, no question of compensation being involved, the employee must submit to the treatment or operation or be barred from compensation for the period of his refusal, and for any increased disability arising therefrom. Where, however, the proffered treatment or operation is of a major character, involving extraordinary pain and suffering, and attended with danger to life and health, either by reason of the serious nature of the injury, or because of the employee's advanced age or physical or mental condition, or does not offer a reasonable hope of a cure or at least substantial hope of an improvement, or is against the advice of his physician, or the medical opinion is at variance as to the exact nature of the treatment to be tried, a refusal to submit thereto is not unreasonable, and compensation will not be withheld on that account."

 Whether or not an employee's refusal to submit to proffered medical treatment is unreasonable is ordinarily a question of fact for the trier of fact, the Workmen's Compensation Commission. 10 Schneider, Workmen's Compensation, p. 154, Note, 73 A. L. R. 1318. And the burden of proving that a tendered operation is simple, safe and will probably effect a cure or substantial improvement is upon the employer. 10 Schneider, ibid., p. 157; Note, 73 A. L. R. 1318.

Arthur Larson summarizes many of the problems in such cases and the decisions today. He states: "The question when compensation should be suspended because claimant refuses to submit to reasonable treatment

or surgery is one of the most delicate medico-legal issues in the entire realm of workmen's compensation. It is easy enough to state a general rule that such unreasonable refusal becomes an independent intervening cause responsible for persisting consequences which the treatment or surgery would have cured. The difficulty arises when 'reasonableness' has to be defined. The judgment usually resolves itself into a weighing of the probability of the operation's successfully reducing the disability by a significant amount, against the risk of the operation to the claimant. If the risk is insubstantial and the probability of cure high, refusal will result in a termination of benefits. But if there is a real risk involved, and particularly if there is a considerable chance that the operation will result in no improvement or even perhaps in a worsening of the condition, the claimant cannot be forced to run the risk at peril of losing his statutory compensation rights. In the commonest operations presenting this problem—hernia, intervertebral disc, and amputations—most courts will not at present disturb a finding that refusal to submit to the operation is reasonable, since the question is a complex fact judgment involving a multitude of variables, including claimant's age and physical condition, his previous surgical experience, the ratio of deaths from the operation, the percentage of cures, and many others. The matter cannot be determined automatically as a matter of medical statistics and expert testimony." 1 Larson, Workmen's Compensation Law (1952), Section 13.22, pp. 189-191.

The five cases which we have found dealing with an employee's refusal to submit to an operation for a herniated, intervertebral disc have all declined to deny compensation for that reason. U. S. Coal and Coke v. Lloyd, 305 Ky. 105, 203 S. W. 2d 47 (1947); K. Lee Williams Theatres, Inc. v. Mickle, 201 Okla. 279, 205 P. 2d 513 (1949); Pruszenski v. Edo Aircraft Corp., 275 App. Div. 1015, 91 N. Y. S. 2d 684 (1949); Mancini v. Superior

Court, 82 Atl. 2d 390 (R. I. 1951). See also Dudansky v. L. H. Sault Const. Co., 70 N. W. 2d 114, 118 (Minn. 1955).

The most recent case dealing with this question is Sultan and Chera Corporation v. Fallas, 59 So. 2d 535 (Fla. 1952). The doctors recommended that Fallas should have a myelographic study and then surgery for removal of a herniated disc. He testified that he was afraid for them to put a needle in his spine to make the myelographic study, and afraid for them to operate. He wanted to be cured without that if at all possible. The court held that the employee's refusal to submit to surgery was not unreasonable. Such operations are major, involving some risk and pain, with a substantial percentage of doubtful results. Affirming an award of compensation, the court said: "It is also well settled that when the operation is a serious one or a major operation and the injured party is informed of the nature of such operation, and is genuinely afraid to undergo such operation, his refusal to submit will not defeat compensation. . . . From this record there can be no doubt that the appellee has a genuine fear of undergoing the recommended pre-operative study and operation. He was fully informed of the nature of the treatment recommended. He may have been afraid of the known suffering he would experience, or the danger of having his spinal cord injured, or the danger of death. No doubt he had heard of many operations which had been successful, but the patients died."

Bear, Intervertebral Disc Injuries in Workmen's Compensation, 6 Vanderbilt L. Rev., 883-905 (1953), is a thorough discussion of the medico-legal problems, and it contains a discussion of some of the cases referred to above. This study confirms the medical experience in similar operations referred to in the above decisions and the testimony of the two doctors in the instant case. Appellee to support its position cites only French v. Em-

ployers Mutual Liability Insurance Company of Wisconsin, 70 So. 2d 179 (La. 1954), which is not in point, since it involves an employee's refusal to have an operation for the removal of a torn cartilage from his left knee, a relatively simple operation, not dangerous to life. The Louisiana cases, including French, fully recognize the general rules applied here. See Hall v. Mingle, 191 So. 759 (La. 1939).

■■ The operation for a herniated disc, which appellant refuses, is not of a simple character, without serious pain or danger. It is a major operation involving some pain and with a doubtful result. ■■ Appellant might well obtain substantial relief, and many persons with more education and understanding of the problem would probably undergo surgery in appellant's condition. The chances are seventy-five percent to eighty percent that he would have substantial relief. On the other hand, there is some risk, although small, of death, and further the chance that he will continue to have pain, he might have a disability of from zero to twenty-five percent, or he might obtain no relief. But the trier of fact, the Commission, and this Court must define "unreasonableness" and relate it to appellant's refusal. This involves weighing the probability of the operation's successfully reducing the disability by a significant amount against the risks of the operation to claimant, including pain, disability, and possible death. We cannot say that these risks are insubstantial. The Commission has decided that appellant's refusal is reasonable. This involves a complex fact judgment involving many variables. Claimant cannot be forced to run the risks at peril of losing his statutory compensation rights. Hence the Commission's order of April 20, 1956, holding appellant's refusal to submit to surgery to be not unreasonable and awarding him compensation, must be reinstated and affirmed.

### 3.

■■■ Appellee contends that the attorney-referee and the Commission erred in reopening this matter pursuant to the motion to vacate the order suspending payments of compensation, since such reopening was in violation of Procedural Rule 5 of the Workmen's Compensation Commission, which provides in part: "On failure of either party to have appeared at a scheduled hearing, the party making an appearance may dismiss by motion or be awarded compensation upon presentation of proper proof. In either case, a request for review by the absent party will not be granted. If, however, a justifiable excuse is presented within seven (7) days after the scheduled date set for the hearing, a motion to reopen will be heard in the Commission's discretion."

On April 6, 1955, appellee applied to the Commission for authority to suspend payments to appellant because of his refusal to submit to surgery. A hearing was set for May 20 and notice given appellant. He did not appear for that hearing, so on May 25 the Commissioner suspended payments of compensation by an order of that date. Appellee argues that, since Rule 5 provides that a motion to reopen must be filed within seven days after the date set for the hearing, which was May 20, and since the appellant's motion to reopen was filed on May 31, that motion was not filed within the seven days required by Rule 5; and therefore the Commission erred in reopening the case.

Code of 1942, Section 6998-24, vests the Commission with a general rule-making power in the "details of practice and procedure." Procedural Rule 5 was made under that authority. And Rule 2 of the Commission states that the rules are subject to amendent at any time. The Commission in its order of April 20, 1956, directed that payments of compensation should not be made to appellant from April 6, the date on which appellee filed motion to suspend payments, until May 31, the date upon which appellant filed its notice to convert

and motion to reopen. This exclusion was because appellant had defaulted and made no appearance at the hearing of May 20, after having been given notice. Nevertheless, it considered the motion to reopen, filed on May 31, as properly before it and within its rules. It necessarily therefore construed Rule 5 as meaning that the motion of May 31 was timely filed within seven days after the order of May 25 suspending payments of compensation. This is reasonable, because claimant could not file a motion to reopen an order until the order is entered. If the seven-day period began to run from the date set for the hearing, and not from the date of the order, the rule would not be fair and just in many cases where the order is made more than seven days after the date set for hearing. The Commission, with power to do so, considered the present motion to reopen as having been timely filed, and to that extent interpreted its own Rule 5 as being consistent with that action. Moreover, Rule 5 provides that the Commission "may, in its discretion, postpone or recess hearings . . . on its own motion." The order of May 25 was in effect made at a postponed or recessed hearing within this provision.

Reversed, order of Workmen's Compensation Commission reinstated and affirmed, and remanded.

*Roberds, P. J.,* and *Hall, Lee* and *Holmes,* JJ., concur.