# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-CC-01226-SCT

*LINZIE DORRIS*

*v.*

*MISSISSIPPI REGIONAL HOUSING AUTHORITY*
*AND LIBERTY MUTUAL INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/07/93 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID L. WALKER |
| ATTORNEY FOR APPELLEES: | ROBERT J. ARNOLD, III |
| | DONALD V. BURCH |
| | ARTHUR S. JOHNSTON, III |
| NATURE OF THE CASE: | CIVIL - WORKER'S COMPENSATION |
| DISPOSITION: | REVERSED AND REMANDED - 2/27/97 |
| MOTION FOR REHEARING FILED: | 3/12/97 |
| MANDATE ISSUED: | 6/12/97 |

**EN BANC.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This workers' compensation case involves the refusal of the claimant, Linzie Dorris (Dorris), to have surgery on a ruptured intervertebral disc. On April 3, 1990, Dorris injured his back while installing cabinets for his employer, the Mississippi Housing Authority. He subsequently filed his petition to controvert with the Mississippi Workers' Compensation Commission (MWCC). Dorris' claim was heard before an administrative law judge (ALJ), who found that Dorris had reached maximum medical recovery and awarded permanent partial disability benefits. All parties petitioned the MWCC for a review of the ALJ's decision. The MWCC affirmed the order of the ALJ. Dorris appealed to the Leake County Circuit Court, which affirmed the decision of the MWCC. Having timely perfected an appeal to this Court, Dorris raises the following issues:

**I. Whether the circuit judge erred in affirming the Mississippi Workers' Compensation**

**Commission's decision that the appellant reached maximum medical improvement?**

**II. Whether the circuit judge erred in affirming the Mississippi Workers' Compensation Commission's decision that the appellant is entitled to permanent partial disability benefits of only $99.23 for 450 weeks?**

¶2. In accordance with the decision in ***Triangle Distributors v. Russell***, 268 So. 2d 911 (Miss. 1972), this Court reverses the decision of the trial court and remands for proceedings consistent with this opinion. Because the first assignment of error raised by the appellant is the dispositive issue in this case, the second assignment of error is not addressed.

## LEGAL ANALYSIS

**I. Whether the circuit judge erred in affirming the Mississippi Workers' Compensation Commission's decision that the appellant reached maximum medical improvement?**

¶**3.** Dorris, age 49, has steadfastly refused to have back surgery. Three doctors recommended that Dorris have the surgery, in order to improve his condition. However, none of them testified that Dorris' improvement would be very substantial. Two of the three doctors testified that, without surgery, Dorris had reached maximum medical recovery.

¶4. Dorris saw Dr. Elmer Nix, an orthopedic surgeon, at the request of the insurance carrier. Dr. Nix testified that Dorris had reached the maximum medical recovery without surgery by October 29, 1990. Dr. Nix estimated Dorris' impairment at 30-35%, and he believed the surgery would reduce the impairment to approximately 25%.

¶5. Dr. Robert Bobo, an orthopedic surgeon, stated that, without surgery, Dorris had reached maximum medical recovery by January 24, 1991. Dr. Bobo testified that surgery would "more likely than not" be beneficial to Dorris. However, Dr. Bobo also stated that the surgery would actually have to be performed before they could know whether Dorris would be better.

¶6. Dr. Bernard Patrick, a neurosurgeon, could not determine whether Dorris had reached maximum medical improvement. Dr. Patrick recommended surgery, but testified that surgery was not mandatory; that is, Dorris was in no danger of nerve root damage, and only in danger of continued discomfort if the surgery were not done. Dr. Patrick also stated that sometimes a ruptured disc would heal without surgery, and sometimes it would worsen and require surgery.

¶7. Dorris contends that he "may continue to be temporarily disabled even through [sic] he has received maximum recovery from conservative treatment if his condition can be improved by surgery." This Court has not considered this question since 1972, when the ruling in ***Triangle Distributors v. Russell***, 268 So. 2d 911 (Miss. 1972), was handed down. In ***Triangle Distributors***, the claimant refused to have back surgery, and this Court reversed the finding of permanent disability:

> Temporary disability, whether total or partial, has reference to the healing period following injury, it begins with the disabling injury and continues until such time as the employee reaches the maximum benefit from medical treatment, or differently expressed, it is a condition which exists until the injured employee is cured or is as far restored as the permanent character of his

injuries will permit. Dunn, *Mississippi Workmen's Compensation*, 2d ed., §75 (1967).

Under the particular facts of this case, we hold that the claimant has not reached maximum benefits from medical treatment, and therefore, his disability, although total in character is temporary in quality and that the Commission erred as a matter of law in finding that claimant's disability was permanent in quality. Whether the claimant continues to refuse surgery or changes his mind, as he has a right to do, and undergoes such treatment, he will receive all benefits contemplated by the act.

*Triangle Distributors*, 268 So. 2d at 912-913.

¶8. The view expressed in *Triangle Distributors* was summarized by a commentator as follows.

A special situation arises when an employee refuses recommended surgery which, if performed, would likely reduce or eliminate disability, as in the usual case of a ruptured intervertebral disc. In such cases, the disability, pending corrective surgery, is to be classed as temporary in quality. The temporary classification applies as a matter of law and a finding by the commission in such cases of permanent disability will be reversed on appeal.

Dunn, *Mississippi Workmen's Compensation*, 3d ed., § 75 (1982) (citing *Triangle Distributors*, 268 So. 2d 911).

¶9. Thus, the decision in *Triangle Distributors* is dispositive of the case at hand. It should be noted, however, that *Triangle Distributors* was based on the decision of the court that the refusal to undergo disc surgery was not "unreasonable" within the meaning of the workers' compensation statutes. That decision was apparently reached with some trepidation:

This Court had a similar question before it in *Walker v. International Paper Co.*, 230 Miss. 95, 92 So. 2d 445 (1957). Some of the judges are not impressed with the soundness of the decision in *Walker, supra*, but it will not be re-examined at this time. It is reluctantly followed and the action of the Commission in finding that claimant's refusal to undergo surgery in the present case was reasonable is affirmed.

*Triangle Distributors*, 268 So. 2d at 912; *Walker v. International Paper Co.*, 92 So.2d 445, 449 (1957)

¶10. Indeed, there is some evidence in the record in the case *sub judice* that disc surgery is not life-threatening and is much safer than it was years ago. However, the other evidence clearly indicated that Dorris' refusal to undergo surgery in this case was reasonable. Although all the doctors recommended surgery, the projected improvement in Dorris' condition after surgery was only about 10%. Furthermore, Dorris testified that he was afraid of the surgery: "[he's] 49 years old now and [he] don't heal as fast as he used to." Thus, given the facts in this case, Dorris' refusal to have the recommended back surgery was reasonable.

¶11. Therefore, under *Triangle Distributors*, Dorris is entitled to temporary benefits. This Court recognizes the dilemma in awarding a claimant temporary benefits on a seemingly "permanent" basis. However, this Court is also mindful of the difficult situation that could arise in the future, should Dorris choose to have the recommended surgery. ***See generally The Lawrin Co., Inc. and USF&G***

*v. Frazier*, 213 So. 2d 548 (Miss. 1968). Although Dorris may reasonably refuse to have the surgery at present, the medical testimony indicated that the pain could worsen. At some point in the future, Dorris may wish to have the surgery; to the extent that he is entitled to payment of the medical bills arising from that surgery, this Court cannot preclude such payment. Furthermore, given the broad policy of the workers' compensation statutes, which operate in favor of compensation to the employee, this Court is persuaded that the reasoning expressed in *Triangle Distributors* applies to Dorris' situation. Therefore, this case is reversed and remanded for proceedings consistent with this opinion.

¶12. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS AND McRAE, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND MILLS, JJ.**

### SMITH, JUSTICE, DISSENTING:

¶13. In my view, Linzie Dorris failed to meet his burden of proof and the decision of the Circuit Court of Leake County affirming the order of the Commission should be upheld. *See Bates v. Country Brook Living Center*, 609 So. 2d 1247, 1249 (Miss. 1992). Additionally, I am especially concerned that the majority has created for this Court a "dilemma in awarding a claimant temporary benefits on a seemingly "permanent" basis." *Majority* at 5. I would uphold the Commission. Therefore, I am compelled to dissent.

¶14. Every doctor who testified in the case at bar recommended that Dorris have back surgery, yet he steadfastly refused. Apparently, his basis for refusal was the mistaken belief that he had a fifty percent chance that he would never walk again if he had the surgery. Dorris testified that one of the doctors made such a statement to him and he thought that Dr. Patrick had made this statement to him. An examination of the testimony of the physicians is helpful in analyzing this question and shedding further light on the subject at hand.

¶15. Dr. Bernard Patrick, a board certified neurosurgeon testified that he was unable to complete his examination of Dorris because he would not cooperate during the examination. Thus, Dr. Patrick was unable to assess a date of maximum medical improvement or work restrictions relating to Dorris. Dr. Patrick stated that Dorris was either magnifying or pretending to have pain or a non-existent disability. Dr. Patrick's testimony may be adequately summed up with the following statement: "I don't think there was much doubt at all that Mr. Dorris was a **fraud** when he came to me at the last examination." (Emphasis added). When point blank asked the question whether he advised Dorris that he may eventually be paralyzed, Dr. Patrick responded, "[n]o, certainly not."

¶16. Dr. Robert Thompson Bobo testified that he examined Dorris on referral from Dorris' attorney, David L. Walker. He too determined that Dorris needed surgery, but stated that Dorris declined both

the surgery and his other suggestion of the epidural block. Dr. Bobo opined that there was a low risk factor for the surgical procedure and that surgery would more likely than not reduce Dorris' impairment rating and restrictions. Finally, Dr. Bobo stated that Dorris reached maximum medical improvement on January 24, 1991, on his last visit to Dr. Bobo and that Dorris had only a fifteen percent permanent medical impairment.

¶17. Dr. Elmer Nix, a board certified orthopaedic surgeon, testified that indeed Dorris had a possible herniated nucleus pulposus at L5 and also that he had a degenerative disc disease at L3 and L4. Dr. Nix recommended surgery which he deemed a minimal risk and opined further that surgery would probably reduce Dorris' impairment. Dr. Nix thought that Dorris had a thirty to thirty-five percent impairment which could be reduced to twenty-five percent with surgery. Dr. Nix contradicted his claim that Dorris was able to return to any type of work activity as of the last date when Dorris visited his office, by stating that Dorris had a lifting restriction of forty pounds. Finally, Dr. Nix stated Dorris reached maximum medical improvement upon his initial office visit on October 29, 1990, because Dorris refused surgery.

¶18. The Commission found that Dorris was entitled to permanent partial disability payments of $99.23 per week, which is clearly supported by the substantial evidence as set out hereinabove through the testimony of the three physicians. This finding was based upon a sixty percent permanent impairment which was determined by the ALJ. Such award is twice the rating given by Dr. Nix, who gave Dorris the highest permanent medical impairment of any of the three physicians who examined Dorris. The evidence from the other two doctors showed an impairment of only fifteen percent by Dr. Bobo, and a zero percent from Dr. Patrick who opined Dorris to be a "fraud." Additionally, there was sufficient and substantial evidence showing Dorris was capable of performing a minimum wage job, that such jobs were available in his locality and that Dorris had not suffered a total loss of wage-earning capacity. This Court should accordingly affirm the findings of the lower court.

¶19. *Triangle Dist's v. Russell*, 268 So. 2d 911, (Miss. 1972), relied upon by the majority, is a case where benefits were denied or refused based on a view of no permanent disability. The case at bar is clearly distinguishable, as here there is no attempt by the appellees to claim permanent disability of Dorris. The simple assertion here is that Dorris has reached his maximum medical improvement and that his disability is not total and permanent. The majority would allow Dorris permanent benefits when Dorris at most has suffered very little permanent disability, or at least according to one physician has suffered no injury whatsoever and is a "fraud". Such finding by the majority flies in the face of the legitimate intent of the Worker's Compensation Law. Dorris has reached maximum medical improvement and refuses surgery; consequently he has arrived at maximum medical improvement. This Court should uphold the Commission and the lower court as to Dorris' date of maximum medical improvement and loss of wage-earning capacity and permanent partial disability benefits.

¶20. I respectfully dissent.

**ROBERTS AND MILLS, JJ., JOIN THIS OPINION.**