MOORE, J.,
for the Court:
¶ 1. Craig Bridgeman appeals his workers’ compensation case from the Madison County Circuit Court which affirmed the decision of the Mississippi Workers’ Compensation Commission in full. Bridgeman claims the Commission’s decision is not supported by substantial evidence and is contrary to the weight of the evidence. Bridgeman particularly complains: (1) since evidence was introduced showing that claimant’s present temporary total disability is directly connected to the original compensable injury and came about through recommended medical treatment for original injury, the employer and carrier should be held liable for present disability; (2) since no evidence was introduced tending to show that claimant willfully failed to comply with home physical therapy, the response to the motion should be dismissed; (3) since the evidence showed that the administrative judge advised claimant to proceed to the full hearing without an attorney and misstated the evidence, the objectivity and credibility of the administrative judge is suspect; (4) since the Commission found Claimant tempo *238 rarily totally disabled beginning January 16, 1997 to February 11, 1997, monetary assessment should be assessed against employer; and (5) since the evidence showed Claimant requested the employer to furnish medical treatment and the employer refused to do so, the employer should be held liable for medical service of the Cleveland Clinic Foundation.
¶ 2. Finding no error, we affirm the Commission.
FACTS
¶ 3. On January 16, 1997, Craig Bridge-man injured his back lifting a fifty pound bag of chemicals while working for North American Plastics, Inc. Bridgeman finished his shift and later that night informed two supervisors about his injury. The following day Bridgeman informed the plant manager about his back pain. Bridgeman claims that the plant manager told him to either return to work or quit his job. Bridgeman quit because he was in too much pain to work. Bridgeman initially treated his pain by lying in the bathtub. When the pain worsened, Bridgeman informed the plant manager that he was still in pain. The plant manager offered to provide medical treatment.
¶4. On February 11, 1997, Bridgeman saw Dr. William Truly, a physician he chose. Dr. Truly admitted Bridgeman to the hospital for five days where he received conservative treatment for his back pain. Dr. Truly remarked that the physical examination was unimpressive except for apparent discomfort due to pain. A CT scan revealed a transverse of the L5 to SI disc which Dr. Truly noted could cause pain. Dr. Truly detected no frank herniation. Once released from the hospital, Bridgeman saw a number of specialists including a neurosurgeon, an orthopedic surgeon, a physiatrist (specialist in physical medicine and physical therapy), a chiropractor, and a pain management specialist. Bridgeman underwent a myelogram and a CT scan, both of which were normal. He underwent physical therapy upon the advice and under the supervision of a phy-siatrist.
¶ 5. The physiatrist, Dr. David Collipp, remarked that on April 9,1997, Bridgeman presented with a “typical slow gait pattern” which Dr. Collipp noted required more energy to accomplish than if Bridge-man would walk a little faster. Dr. Collipp also noted that the physical therapist had reported that Bridgeman showed no signs of pain from a physiologic standpoint and that he refused to fully cooperate during his functional capacity evaluation. Dr. Collipp noted the “entire examination seems to be typified by self limitation and complaints of pain.” Dr. Collipp noted that Bridgeman reached maximum medical improvement as of April 16, and assessed 0% disability and impairment. Dr. Collipp stated that there was no partial permanent impairment except as Bridgeman was self-limited and failed to participate.
¶ 6. In November 1997, Bridgeman’s neurosurgeon referred him to an orthopedic surgeon upon Bridgemaris request. The orthopedic surgeon arranged for a bone scan which was normal. The orthopedic surgeon told Bridgeman his choices for relief of his pain were three: (1) learn to accept the discomfort, (2) receive treatment from a pain management clinic, or (3) seek chiropractic treatment. Bridgeman opted for the chiropractic treatment. From December 22, 1997 to February 13, 1998, Bridgeman was treated by chiropractor Dr. Carl Hunt. Dr. Hunt prescribed physical therapy and performed spinal adjustments thrice weekly. On February 13, 1998, Dr. Hunt released Bridgeman from his care and advised him to do home exercises to strengthen his back. Dr. Hunt assigned a permanent impairment rating of 5 to 6%.
¶ 7. From March 3, 1998 to May 1998, Bridgeman lived in Cleveland, Ohio with his father. He worked with his father for one or two days doing landscape work. Other than this one or two days of landscaping work, Bridgeman did not work *239 because of the pain. Seeking relief from his pain, Bridgeman went to the Cleveland Clinic emergency department on March 23, 1998. The compensation carrier did not approve or pay for Bridgeman’s visit to the Cleveland Clinic. The doctor who treated him at the Cleveland Clinic referred him to the pain management center, but the carrier would not authorize this treatment. On June 3, 1998, the compensation board sent Bridgeman to see his physiatrist, Dr. Collipp, again. Dr. Collipp noted that Bridgeman’s complaints “just do not follow a constant general orthopedic pathological history.” Dr. Collipp concluded that he simply had'nothing more to offer Bridgeman.
¶ 8. The administrative judge sent Bridgeman to Dr. Jeffrey Summers, a pain management specialist, for evaluation. Dr. Summers examined Bridgeman on July 14, 1998. Dr. Summers noted that Bridgeman exhibited histrionic illness behavior. Dr. Summers further noted no evidence of neurological dysfunction. Dr. Summers noted that lumbar range of motion is reduced but he attributed this to be “somewhat self limited secondary to reported pain.” Dr. Summers noted that the most consistent finding is that of significant deconditioning which he attributed to Bridgeman’s inactivity. Bridgeman admitted to Dr. Summers that he had spent over half of his time in bed for the past six months and further admitted that he had not complied with prescribed home exercise because of his pain. Dr. Summers stated that Bridgeman “consistently reports pain with SI provocative maneuvers, but he exhibits significant illness behavior and reports pain with Sham pain provocation on Waddell’s testing.”
¶ 9. Dr. Summers further noted that Bridgeman’s deconditioning is not surprising considering that he had basically been out of work for a year and a half and had been leading a sedentary lifestyle. Dr. Summers thought that Bridgeman would benefit from physical therapy but noted that if Bridgeman failed to aggressively participate in physical therapy, further therapy beyond two weeks would not likely benefit him. Dr. Summers thought Bridgeman could eventually advance to a work hardening program which would allow him to return to some form of employment including that involving manual labor.
¶ 10. Bridgeman’s employer paid temporary total disability benefits from February 11, 1997 to May 15, 1997, the date Dr. Collipp designated as Bridgeman’s maximum medical improvement, and again from December 22, 1997 to February 16, 1998, the date Dr. Hunt released Bridge-man from his care. Bridgeman moved to controvert and in November 1998 the ease proceeded to hearing before the administrative judge. Bridgeman represented himself at the hearing and continues to represent himself on appeal. At issue was the extent of Bridgeman’s disability or loss of wage earning capacity resulting from the work injury. After reviewing the medical evidence and hearing testimony from Bridgeman, the administrative judge ruled that Bridgeman was temporarily totally disabled from January 16, 1997 to May 15, 1997, and again from December 22,1997 to February 16,1998.
¶ 11. The administrative judge found that the medical evidence as a whole did not support a finding of permanent impairment or loss of wage-earning capacity; rather, Bridgeman could return to gainful employment if he would recondition himself at home by performing the exercises recommended by his physicians. The administrative judge further found the employer and compensation carrier were not liable for any further workers’ compensation benefits to Bridgeman. The judge noted: “Mr. Bpidgeman needs to let go of his obsession with this workers’ compensation claim and, as more than one of his treating physicians said, get on with his life.” The Commission affirmed as did the Madison County Circuit Court.
*240 LAW AND ANALYSIS
WAS THE COMMISSION’S DECISION SUPPORTED BY SUBSTANTIAL EVIDENCE?
¶ 12. “Our scope of review on appeal is limited to a determination of whether the Commission’s findings of fact and order are supported by substantial evidence. The Commission’s order will be reversed only if found to be clearly erroneous and contrary to the overwhelming weight of the evidence.” Marshall Durbin Companies v. Warren, 633 So.2d 1006, 1009-10 (Miss.1994). A review of the medical evidence and Bridgeman’s testimony convinces this Court that the Commission’s order is supported by substantial evidence and is not clearly erroneous. Particularly, we note that Bridgeman’s deconditioning stems from his own refusal to fully participate in the physical therapy and home exercises prescribed by his physicians. The medical evidence further shows that Bridgeman exhibited signs of self limitation and displayed histrionic illness behavior. From a thorough review of the medical evidence, we can determine that while his problems began with an on-the-job injury, his current condition is attributed to his own noncompliance with his doctors’ orders. Thus, the Commission’s finding of no permanent impairment and no loss of wage earning capacity is supported by substantial evidence. We now address Bridgeman’s specific concerns as stated on appeal.

1. Since evidence was introduced showing that claimant’s present temporary total disability is directly connected to the original compensable injury and came about through recommended medical treatment for original injury, the employer and carrier should be held liable for the present disability.

¶ 13. Bridgeman complains that his current disability was caused by the medical treatment that was prescribed for his back injury. Particularly, he argues that his physicians recommended that he apply heat to his back to reheve the pain. Bridgeman attributes his current decondi-tioning, as diagnosed by Dr. Summers, to lying in bed for most of the day with a heating pad. “In other words, the claimant was following the recommended medical treatment of applying heat to relieve his back pain caused by the accidental injury January 16, 1997.” We can find no instances in the record where Bridgeman was instructed to he in bed with a heating pad for most of the day. In fact, the medical records are replete with suggestions that Bridgeman participate in physical therapy and perform home exercises to aid his recovery. While this argument is creative, it is without evidentiary foundation.
2. Since no evidence was introduced tending to show that claimant willfully failed to comply with home physical therapy, the response to the motion[1] should have been dismissed.
¶ 14. Bridgeman admits that he was obligated to comply with home exercises. He claims, however, that his noncompliance must be arbitrary, unreasonable and unjustified to relieve his employer and the carrier of liability and that the employer and carrier must prove such. The general rule is:
[W]hen the proposed medical ... treatment ... is reasonable and of a minor character, relatively safe and simple, with no great danger attached thereto, is not exploratory or experimental, and is such to which an ordinarily prudent and reasonable person would submit for his own benefit and comfort, no question of compensation being involved, the employee must submit to the treatment or operation or be barred from compensation for the period of his refusal, and for any increased disability arising therefrom.
Walker v. International Paper Company, 230 Miss. 95, 105, 92 So.2d 445, 449 (1957) *241 (quoting 10 Schneider, Workmen’s Compensation (3rd Ed.1953), Section 2019, pp. 151-199). In Bridgeman’s case, the physicians concurred that Bridgeman would be capable of work if he would recondition himself through physical therapy and home exercises. Bridgeman admits that he did not do the exercises. His failure to comply with the proposed treatment under the above general rule is unjustified. Therefore, the Commission’s finding that North American was not liable for further compensation is supported by substantial evidence.

S. Since the evidence showed that the administrative judge advised claimant to ‘proceed to the full hearing without an attorney and misstated the evidence, the objectivity and credibility of the administrative judge is suspect.

¶ 15. Bridgeman claims that he voiced concerns about proceeding further without an attorney. This is unsupported by the record. American Plastics claims that the administrative judge made Bridgeman aware of his right to counsel, but Bridge-man chose to proceed on his own. The only direct reference to Bridgeman’s pro se status occurred in the administrative judge’s opinion as follows:
Mr. Bridgeman is a high school graduate who attended college for six years studying engineering courses. He testified at the hearing in a very articulate fashion, and he ably represented himself in this workers’ compensation claim, seeming to enjoy the litigation process, fashioning various motions, presenting for motion hearings, and executing and serving subpoenas.
There is no evidence that Bridgeman expressed concern over not being represented by an attorney. To the contrary, evidence abounds showing that Bridgeman’s pro se status was voluntary including his self-representation on this appeal.
¶ 16. Further, a thorough review of the record reveals that while the administrative judge may have paraphrased certain statements in the medical records, she did not misstate facts or evidence in her order. Bridgeman’s claim that the administrative judge’s objectivity and credibility is suspect is unfounded.
A Since the Commission found Claimant temporarily totally disabled beginning January 16, 1997 to February 11, 1997, monetary assessment should be assessed against employer.
¶ 17. American Plastics and the compensation carrier began paying Bridgeman temporary total disability benefits on February 11, 1997. The injury occurred January 16, 1997, and the administrative judge ruled Bridgeman temporarily totally disabled beginning January 16. Bridgeman is correct that he is due compensation from the date of his injury to February 11. Pursuant to Miss.Code Ann. § 71-3-51 (Rev.1995), if on appeal to the circuit court “no prejudicial error be found, the matter shall be remanded to the commission for enforcement.” Accordingly, since we find no prejudicial error, the matter is remanded to the Commission for enforcement.

5. Since the evidence showed Claimant requested the employer to furnish medical treatment and the employer refused to do so, the employer should be held liable for medical service of the Cleveland Clinic Foundation.

¶ 18. The Commission ruled that the medical treatment provided by the Cleveland Clinic was not reasonable nor medically necessary nor authorized. Noting the stringent standard of review as stated at the beginning of this opinion, we find this ruling supported by substantial evidence. . Thus, we are not at liberty to require North American or the compensation carrier to pay for this treatment.
¶ 19. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT AFFIRMING THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED AND REMANDED TO THE COMMISSION FOR ENFORCEMENT. ALL COSTS OF *242 APPEAL ARE ASSESSED TO APPELLANT.
KING AND SOUTHWICK, P.JJ., IRVING, LEE, MYERS, PAYNE, AND THOMAS, JJ„ CONCUR. McMILLIN, C.J., AND BRIDGES, J., NOT PARTICIPATING.

. It is not clear to which motion Bridgeman refers.