958 So.2d 224 (2007)
CASINO MAGIC and Zurich American Insurance Company, Appellants,
v.
Dixie NELSON, Appellee.
No. 2006-WC-00493-COA.
Court of Appeals of Mississippi.
February 6, 2007.
Rehearing Denied June 12, 2007.
William D. Blakeslee, Gulfport, attorney for appellants.
James Kenneth Wetzel, Gulfport, attorney for appellee.
Before LEE, P.J., BARNES and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. On April 11, 2002, Dixie Nelson injured her right shoulder while working for her employer, Casino Magic in Bay St. Louis, Mississippi. Casino Magic and its insurance carrier, Zurich American Insurance Company, (collectively referred to as Casino Magic) provided light-duty work and certain medical benefits, but then denied the compensability of the injury and did not pay any workers' compensation disability benefits. Nelson filed a petition to controvert. The Mississippi Workers' *226 Compensation Commission (Commission) affirmed the decision of the administrative judge finding that Nelson had been temporarily totally disabled. The Circuit Court of Hancock County affirmed the Commission's decision. Aggrieved, Casino Magic appeals asserting the following issues for this Court's review:
I. Whether the finding of the Commission that Nelson has been temporarily totally disabled since April 11, 2002 is wrong as a matter of law or is not supported by substantial evidence.
II. Whether the finding of the Commission that Nelson's medical condition is related to her employment with Casino Magic is supported by substantial evidence.
Finding no error, we affirm.

FACTS
¶ 2. At the time of the administrative judge's decision, Nelson was a forty-three-year-old resident of Bay St. Louis, Mississippi. After graduating from high school, Nelson took some classes at Pearl River Junior College, but did not receive a degree. She had vocational and other training, such as cake decorating, flower arranging, home interior decorating, and word processing.
¶ 3. Casino Magic opened in September of 1992. Approximately four months later, in January of 1993, Nelson began working for Casino Magic as a clerk in the main cage of the casino. She was eventually promoted to the position of "main banker," a position which she held for five or six years. Over the course of her employment with Casino Magic, Nelson always received top pay raises, was never in trouble, and was twice named "employee of the month."
¶ 4. In her main banker position, Nelson was responsible for performing any necessary job in the cage, which functions as the bank of the casino. Nelson, who is only four feet and eleven and one-half inches tall, testified that she had a very difficult time reaching for things across the counters on the inside of the cage because they came up to her breasts. She further testified that she spent much of her eight hour workdays stretching across the counters in order to reach a time clock to stamp every "piece of paper work" coming in or out of the cage. According to Nelson, she reached for the time clock as many as 300 to 400 times a day, as the exact time of every transaction had to be documented. Nelson complained to her superiors on numerous occasions about her struggle to reach the time clock, but nothing was done to accommodate her.
¶ 5. On April, 11, 2002, Nelson injured her right shoulder while reaching for the time clock. Nelson later testified that the pain was an excruciating stabbing pain underneath her right shoulder. She reported the injury to her supervisor, and later that day, Nelson went to Gulf South Urgent Care where she was seen by Dr. Romine. Dr. Romine diagnosed Nelson with "cervical myositis" and stated that she was able to return to light-duty, but advised that she do no cross-body arm twisting and no lifting, pulling, or twisting movements with more than ten pounds. Dr. Romine also advised Nelson to see her own doctor. Consequently, on April 22, 2002, Nelson went to see Dr. Bertin C. Chevis, a family practitioner in Bay St. Louis. Dr. Chevis gave Nelson a steroid injection, took her off work for two days, and limited her to light duty (lifting no more than ten pounds) upon her return to work. Dr. Chevis ordered an MRI of the cervical spine and noted that Nelson was unable to lift, bend, stoop or cope in stressful situations. Dr. Chevis also requested a medical leave of absence for Nelson, but Casino Magic denied the request.
*227 ¶ 6. On April 25, 2002, Casino Magic assigned Nelson to light-duty work which consisted of rolling silverware and napkins in the buffet. Nelson testified that rolling silverware was more difficult for her to perform than her regular job. Consequently, after performing this job for a week and a half, Nelson took vacation time and then requested to return to her regular position. She returned to her job as main banker until she had the MRI and was given medical leave.
¶ 7. In addition to Dr. Romine and Dr. Chevis, Nelson was seen by several physicians following her injury on April 11, 2002, including Dr. David B. Clause, an orthopaedic surgeon, Dr. Terry Smith, a neurosurgeon, Dr. Michael W. Lowry, a neurosurgeon, and Dr. Joe Jackson, a neurologist. Nelson also underwent physical therapy with Matthew Capo, a physical therapist in Bay St. Louis. Capo initially examined Nelson on April 12, 2002. He opined that Nelson's symptoms were work-related because she complained of pain when she reached for chips or time cards at Casino Magic.
¶ 8. Casino Magic sent Nelson to Dr. Clause on May 6, 2002. Dr. Clause noted that Nelson was complaining of shooting pain in her trapezium and neck pain when her arm was lifted overhead. He further noted that there were no obvious signs of trauma, but there was tenderness over the trapezium. Dr. Clause advised Nelson to continue physical therapy, but he did not recommend that she have an MRI. Nelson returned to Dr. Clause for a follow-up visit on June 3, 2002. Dr. Clause opined that the "big problem is coming from her neck," and he recommended a cervical MRI. Nelson visited Dr. Clause again on June 26, 2002. Dr. Clause noted that the MRI showed a "severe herniated nucleus pulposus at C5-6 and C6-7," and he recommended that she see Dr. Smith, a neurosurgeon, for further evaluation.
¶ 9. Dr. Smith reviewed Nelson's MRI and noted that the disc abnormality was more on the left than the right. Thus, Dr. Smith stated that he was not sure whether the disc abnormality was causing her right arm symptoms. Nonetheless, Dr. Smith recommended that Nelson receive a steroidal epidural injection in the neck. On July 15, 2002, Nicole Fritshce, a workers' compensation claim representative, wrote a letter to Nelson stating that "Dr. Smith has determined that your cervical complaints are not related to your work injury." Consequently, Casino Magic stopped payment on a check for $645.80 for temporary total disability benefits.
¶ 10. At Dr. Chevis's recommendation, Nelson went to see Dr. Lowry, a neurosurgeon, on August 26, 2002. After examining Nelson and reviewing the cervical MRI, Dr. Lowry concluded that Nelson had degenerative cervical disc disease. Dr. Lowry further concluded that "[t]he degenerative nature of [the] lesions make[s] it pretty clear that they have been longstanding in getting to their current degree, but it is also clear that the incident at work most likely aggravated this underlying condition." Consequently, Dr. Lowry recommended that Nelson undergo surgery and additional diagnostic testing. Around this period of time, Nelson lost all medical benefits when her husband was terminated from his job and when she was fired by Casino Magic.
¶ 11. On March 6, 2003, almost a year after her injury, Nelson was examined by Dr. Jackson, a neurologist. Dr. Jackson reviewed Nelson's medical records, including Nelson's deposition and the deposition of Dr. Lowry, which were submitted to him by Casino Magic's attorney. Dr. Jackson concluded that Nelson sustained a muscle ligament injury to the shoulder on *228 April 11, 2002, due to repetitive overuse of the shoulder. Dr. Jackson also concluded, however, that Nelson's cervical spine problem was unrelated to the work incident. Nevertheless, in a subsequent report, Dr. Jackson opined that it was "likely that the April 11, 2002 injury simply exacerbated" a pre-existing condition. Dr. Jackson recommended that Nelson undergo further tests, including EMG nerve conduction studies and a functional capacity evaluation.
¶ 12. After conducting a lengthy hearing, the administrative law judge determined that Nelson received a work-related injury to her neck, right shoulder, and/or thoracic spine on April 11, 2002. The administrative law judge further found that Nelson had "severe degenerative problems in her cervical spine and other possible problems with her right shoulder and thoracic spine which were significantly aggravated by the work situation at Casino Magic." According to the administrative law judge, Nelson received a "gradual and repetitive injury" that became disabling on April 11, 2002. The administrative law judge found substantial medical evidence to support a finding that repetitive reaching for the time clock aggravated a pre-existing condition. Consequently, the administrative law judge found that Nelson was temporarily totally disabled and held that Casino Magic was responsible for additional medical treatment and diagnosis testing as recommended by her treating physicians.

STANDARD OF REVIEW
¶ 13. This Court's scope of review in appeals of Workers' Compensation cases is limited to a determination of whether the decision of the Commission is supported by substantial evidence. Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 447(¶ 7) (Miss.Ct.App.1999). The Commission sits as the ultimate finder of facts; its findings are subject to normal, deferential standards upon review. Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss.1993). We will only reverse the Commission's rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious. Westmoreland, 752 So.2d at 448(¶ 8); Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1225 (Miss.1997).

ISSUES AND ANALYSIS
I. Whether the finding of the Commission that Nelson has been temporarily totally disabled since April 11, 2002 is wrong as a matter of law or is not supported by substantial evidence.
¶ 14. Under this assignment of error, Casino Magic takes issue with the administrative law judge's finding that "there is an unpleasantness surrounding this employee, employer, and workers' compensation claim that makes it understandable that Ms. Nelson would not want to return to an employer that has been unwilling to believe her medical complaints or provide medical benefits." Casino Magic asserts that "unpleasantness" regarding a workers' compensation claim is not a legal basis for a disability under the Mississippi Workers' Compensation Act. Casino Magic further asserts that the finding of disability in this case was not supported by medical findings, as Nelson was returned to light-duty work, and such light-duty work was provided by Casino Magic.
¶ 15. The administrative law judge reviewed much of the medical evidence in finding Nelson to be temporarily totally disabled. In support of her findings, as adopted by the Commission, the administrative law judge specifically noted the records from the urgent care clinic stating *229 that Nelson's condition was aggravated by her work. The judge further noted Dr. Lowry's conclusion that the reaching incident at work aggravated Nelson's underlying degenerative condition, as well as Dr. Jackson's conclusion that it was "likely that the April 11, 2002 injury simply exacerbated" a pre-existing condition. Consequently, the administrative law judge determined that there was substantial medical evidence to support Nelson's claim that repetitive reaching for the time clock aggravated a pre-existing condition.
¶ 16. In addition to this medical evidence, the administrative law judge also considered Nelson's testimony that she did not believe that she could hold down any form of gainful employment due to her condition, as well as her testimony that the light-duty work provided to her was more difficult than her previous position as main banker. The administrative law judge determined that Nelson was "an articulate, believable witness in her own behalf" and noted that Nelson was employed by Casino Magic for more than nine years, and that she earned awards and recognition as an excellent worker until the incident on April 11, 2002. Consequently, we find substantial evidence to support the Commission's finding that Nelson was temporarily totally disabled. This issue is without merit.
II. Whether the finding of the Commission that Nelson's medical condition is related to her employment with Casino Magic is supported by substantial evidence.
¶ 17. Casino Magic argues that Nelson failed to prove that she sustained a work-related injury which resulted in a condition requiring medical treatment. In support of this argument, Casino Magic asserts that, although Nelson claimed that she had no symptoms until a sudden traumatic event took place on April 11, 2002, she testified that the accident was cause by "[c]ontinuously" having to reach for things . . . causing [her] to stretch and reach." Casino Magic also cites Nelson's medical records which report no acute trauma as a cause of her complaints. Noting these inconsistencies, Casino Magic argues that the finding of medical causation is unsupported by substantial evidence.
¶ 18. Mississippi Code Annotated section 71-3-3(b) (Rev.2000) contemplates the aggravation of a pre-existing condition, as it provides in relevant part that an injury arises "out of and in the course of employment . . . if contributed to or aggravated or accelerated by the employment in a significant manner." The record shows that Nelson, at four feet and eleven and one-half inches tall, was required by her job to reach over a counter and stretch for the time clock as many as 300 to 400 times a day. Furthermore, despite complaining to her supervisors about her difficulty reaching for the time clock, Casino Magic failed to take steps to accommodate Nelson. The record further shows that on April 11, 2002, Nelson complained to her supervisor of excruciating pain in her shoulder after reaching for the time clock at work. Nelson went to an urgent care clinic later that day to receive treatment for the pain. Thus, Nelson's extensive medical treatment clearly began after an incident at work on April 11, 2002.
¶ 19. Dr. Lowry concluded that the reaching incident at work aggravated an underlying degenerative condition. Furthermore, although Dr. Jackson, initially stated that he did not believe Nelson's complaints were related to the reaching incident, he later concluded that the reaching incident on April 11, 2002 exacerbated a pre-existing condition. Consequently, we find that substantial, both medical and the lay testimony of Nelson, supports the *230 Commission's decision. This issue is without merit.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.