CARLTON, J.,
for the Court:
¶ 1. Kathy Allegrezza suffered injuries to her wrists and back during her employ *757 ment at Greenville Manufacturing Co. (Greenville Manufacturing) and filed a claim to receive workers’ compensation. After a hearing, the administrative-law judge (ALJ) found a permanent partial impairment in both upper extremities based on Allegrezza’s carpal tunnel syndrome claim. The ALJ awarded Allegrez-za temporary total disabilities benefits for six weeks, and permanent partial disability benefits for fifty weeks. As to her back-injury claim, the ALJ found that Allegrez-za failed to demonstrate a loss of wage earning capacity as a result of her injury, and the ALJ awarded no compensation.
¶ 2. The ALJ also denied Allegrezza’s motion to amend the petition to controvert to allege psychological overlay. The ALJ further determined that Allegrezza received treatment by three doctors who were outside the chain of referral. The ALJ found that the treatments Allegrezza received by these three doctors were not reasonable and necessary to Allegrezza’s recovery; therefore, payment for the treatments failed to fall under the financial responsibility of Greenville Manufacturing.
¶ 3. On appeal, the Mississippi Workers’ Compensation Commission affirmed .the ALJ’s order as to the findings and decision on the carpal tunnel claim and psychological overlay claim. However, with respect to Allegrezza’s back injury, the Commission concluded that her injury resulted in some percentage of loss of wage earning capacity due to restrictions placed upon her by a pain specialist. Allegrezza then appealed to the Washington County Circuit Court, which affirmed the Commission’s decision.
¶ 4. Employing our limited standard of review, we are unable to say the Commission erred as a matter of law or acted in an arbitrary and capricious manner. Therefore, we affirm.
FACTS
¶ 5. Allegrezza, forty-one years old at the time of her workers’ compensation claim, attended school in Greenville, Mississippi, through the seventh grade. She began working for Greenville Manufacturing beginning in May 1993 as a sewer in the sewing department, and she continued working there on and off throughout the years. Allegrezza was last hired at Green-ville Manufacturing in May 1997, where she worked in quality control. Allegrezza soon requested and received a transfer to the “cutter department,” where she obtained a pay increase.
¶ 6. After the transfer, Allegrezza claims that she began to experience pain and swelling in her hands and wrists. Alle-grezza sought treatment from her physician, Dr. Joe Pulliam at Family Medical Clinic in Greenville, for her bilateral upper extremities. Greenville Manufacturing and its insurance carrier, The Travelers Insurance Company (Travelers), referred Allegrezza for an evaluation by Dr. Jim Adams. The record shows that Dr. Adams first treated Allegrezza on September 5, 1997. Dr. Adams referred Allegrezza to Dr. Don Carpenter for electromyogram and nerve conduction studies (EMG/NCS) and to Dr. Aubrey Lucas, a hand specialist in Jackson, Mississippi.[1]
¶ 7. Dr. Carpenter performed the EMG/ NCS on September 23, 1997, and the ALJ’s opinion stated that those studies reflected that Allegrezza suffered from bilateral carpal tunnel syndrome. Allegrez-za also received treatment from Dr. Lucas on the same day, and continued to be *758 evaluated by Dr. Lucas until February 25, 2000. After Allegrezza continued to complain of pain, and due to her apparent lack of improvement with conservative treatment, Dr. Lucas recommended surgery (bilateral carpal tunnel releases) on Alle-grezza’s wrists. The record shows that Allegrezza also sought evaluation from Dr, Larry Field, an orthopaedic surgeon, and Dr. Shelby Brantley, both of whom confirmed .the bilateral carpal tunnel syndrome diagnosis and recommended surgery.
¶ 8. Dr. Lucas performed bilateral carpal tunnel releases on Allegrezza on January 8, 1998. Dr. Lucas recommended that Allegrezza recover from her surgery before returning to work. Dr. Lucas indicated that he placed Allegrezza at maximum medical improvement (MMI) as of April 2, 1998, and he released Allegrezza to return to her regular duties at work on April 3, 1998. Dr. Lucas continued treating Alle-grezza, and the record reflects that repeát EMG/NCS studies showed Allegrezza’s condition had improved. Dr. Lucas’s final restrictions stated that Allegrezza could return to regular work duty for two hours per day, but he cautioned that her repetitive work should be restricted for the remaining six hours of any work day.
¶ 9. On February 25, 2000, Allegrezza complained to Dr. Lucas of increased wrist pain resulting from using scissors as part of her job as a cutter. Dr. Lucas recommended Allegrezza refrain from working for six weeks due to a recurrence of carpal tunnel symptoms. Dr. Lucas then released Allegrezza after that time to return to work under the same previous restrictions, specifying that “the amount of repetitive and/or forceful work should be decreased or limited. Repetitive work is defined as any work in which the fundamental task is repeated every 15 seconds or less or any work in which greater than 50% of the work cycle time ... involves pinching, gripping, or grasping.”
¶ 10. In his deposition, Dr. Lucas testified that the permanent work restrictions were due to the recurrence of Allegrezza’s symptoms, his findings on her physical examination, the objective EMG/NCS study, and his expertise in the field of hand surgery. Dr. Lucas also assigned a five percent permanent partial impairment rating to each of Allegrezza’s upper extremities and testified that her work caused or aggravated her bilateral carpal tunnel condition to where it became symptomatic. Dr. Lucas admitted on cross-examination that he allowed Allegrezza to choose her own restrictions, but stated that he felt the restrictions were adequately appropriate.
¶ 11. The record reflects that on January 21, 1998, Allegrezza tripped over a pallet at the plant while walking with and talking to a co-worker. Allegrezza fell on her left side. She alleged at the time that she reinjured both wrists, and also injured her left shoulder, neck, and lower back. Allegrezza returned to Dr. Lucas on January 22, 1998, for an evaluation of her wrists after the fall. The record states that Dr. Lucas indicated that the fall did not change Allegrezza’s ultimate condition or worsen the condition of either wrist.
¶ 12. Allegrezza sought another evaluation from Dr. Adams and Dr. Pulliam. Dr. Pulliam diagnosed Allegrezza with back strain and subsequently referred her to Dr. Rodney Frothingham, a neurosurgeon, for her back injury. Dr. Frothingham ordered a lumbar MRI, which was read as negative, but demonstrated a degenerated disc at L4 and L5 without any evidence of nerve root compression. Based on Alle-grezza’s MRI results, Dr. Frothingham determined that Allegrezza was not a surgery candidate. However, in his testimony, he agreed that a fusion surgery and *759 radiculopathy, which reduces back pain for a patient, would be considered a successful surgery for Allegrezza to undergo. The record shows that Allegrezza eventually underwent a lumbar fusion surgery in September 1999, performed by Dr. Adam Lewis.
¶ 18. Dr. Jo Travis, an anesthesiologist who also specialized in pain management, also treated Allegrezza. When Allegrezza received no apparent relief from treatment from Dr. Travis, he referred her to Dr. David Collipp, a physical medicine and rehabilitation specialist. Dr. Collipp diagnosed Allegrezza with a left sacroiliac (SI) joint problem, and recommended that Alle-grezza proceed with a facet and SI.joint injection. Allegrezza underwent the facet injection, receiving immediate relief, but she did not receive the SI injection. Alle-grezza continued to receive treatment from Dr. Collipp, who eventually referred Alle-grezza back to Dr. Frothingham for further evaluation of her back. Dr. Frothing-ham reexamined Allegrezza on August 6, 1998, when he recommended a lumbar my-elogram.
¶ 14. Greenville Manufacturing and Travelers requested that Dr. John Brophy perform an evaluation of Allegrezza on August 11, 1998. Dr. Brophy opined that sacroiliitis was the primary source of Alle-grezza’s current pain, with possible mild lumbar radiculopathy. Dr. Brophy agreed with Dr. Frothingham’s recommendation for a lumbar myelogram/CT scan. Dr. Brophy explained that his evaluation yielded no evidence of nerve root compression, and he recommended that Allegrezza continue with nonsteroidal anti-inflammatories and progress to “work hardening/work conditioning” so that she could return to her previous level of activity. He concurred that Allegrezza was not a surgery candidate.
¶ 15. Allegrezza underwent the lumbar myelogram/GT scan on August 17, 1998, which reflected no focal abnormalities and no focal disc herniation. As stated in the ALJ’s order, the scan provided essentially normal results. Allegrezza returned to Dr. Collipp, who explained that since the myelogram did not reflect any abnormalities, he believed the L5 damage resulted from the pyriformis muscle, and he recommended continued therapy. Dr. Collipp prescribed pain medicine for the numbness and tingling and recommended a SI joint injection.
¶ 16. Allegrezza complained that her condition failed to improve, and Dr. Collipp informed her that there was very little on the physical examination to support her complaints. Dr. Collipp suggested that Al-legrezza undergo a functional capacity evaluation (FCE). On November 3, 1998, physical therapist Christopher Menhard performed a FCE and later an on-site job analysis at Greenville Manufacturing. Based on the FCE and the on-site analysis, Menhard opined that Allegrezza could safely perform all aspects of the job assigned to her' to perform as a cutter. Menhard indicated that Allegrezza needed job restrictions, but opined that she could perform a light to light-medium duty job. Menhard found that Allegrezza’s position as a cutter was a medium to light-medium duty job. Further, he found that although some repetition was involved in the job, there was no forceful repetition. He found that Allegrezza was able to take several minutes to rest between actions. Based on Menhard’s testimony, the ALJ found that Allegrezza “could have performed the job provided to her by Greenville Manufacturing.”
¶ 17. Following the FCE, Dr. Collipp reviewed the results with Allegrezza and indicated that she could return to work at a light-medium duty job. Her placed her *760 at MMI on November 19, 1998, and assigned a ten percent permanent partial impairment rating to her body as a whole.
¶ 18. Allegrezza then returned to Dr. Pulliam, who referred her to Dr. Michael Steuer, a physician board certified in physical medicine and rehabilitation. The ALJ noted in her opinion that Allegrezza failed to obtain authorization from Greenville Manufacturing or Travelers to begin treatment with Dr. Steuer. The ALJ found that Allegrezza could have requested authorization from Greenville Manufacturing and Travelers to be treated by Dr. Steuer, or, “if [Greenville Manufacturing and Travelers] declined to authorize the treatment[,] ... then [Allegrezza] had the option of coming before the Commission and having the Commission authorize future treatment that [Allegrezza] might choose.” The ALJ found that the record contained no evidence that Allegrezza ever sought authorization from the Commission to receive treatment from Dr. Steuer. The ALJ further opined that in light of the medical testimony accumulated prior to the referral to Dr. Steuer, “it does not seem that [Allegrezza] went without any reasonable or necessary medical treatment.” Instead, it seemed “merely that she was dissatisfied with the results of some of the treatment she received.”
¶ 19. The record shows that Dr. Steuer referred Allegrezza to Dr. Margaret Cas-sada, a board-certified psychiatrist, for psychological treatment. Dr. Cassada opined that Allegrezza suffered from depression and problems with her psychosocial environment. Prior to her hearing before the ALJ, Allegrezza filed a motion to amend the petition to controvert to allege psychological overlay. The record shows that- in support of her motion, Alle-grezza offered the testimony of Dr. Cassa-da.
¶ 20. The ALJ ultimately denied Alle-grezza’s motion to amend the petition to controvert, finding the treatment provided by Dr. Steuer and Dr. Cassada, and also by Dr. Lewis, outside the chain of referral. The ALJ further found that the treatment by these doctors was not the financial responsibility of Greenville Manufacturing or Travelers, and that the treatment was not reasonable and necessary to Allegrezza’s recovery. When addressing the medical testimony later in the opinion, the ALJ stated that “[s]ince the issues of Dr. Steuer’s treatment and all following treatment for the back and alleged psychological injuries have been previously addressed, no further medical testimony regarding those issues will be considered.”
¶ 21. Allegrezza testified that her last day of work at Greenville Manufacturing was February 9, 2000. Allegrezza claims that Greenville Manufacturing terminated her because she did not have the ability to perform her job. The record reflects that at the time of the hearing, Greenville Manufacturing’s plant had been closed down for a period of time; therefore, Greenville Manufacturing provided no testimony on its own behalf. Allegrezza testified that she had conducted a job search, and the ALJ’s order reflects the finding that Alle-grezza met her burden in that regard. On her job applications, Allegrezza explained that she left her prior employment because of her placement on leave due to medical conditions. The ALJ further noted that at the hearing, Allegrezza admitted that no doctor instructed her that she could not work, including Doctors Steuer, Cassada, and Lewis (the doctors whose care the ALJ did not recognize as reasonable and necessary).
¶ 22. After the hearing, the ALJ entered an order on October 2, 2002, finding that with regard to carpal tunnel syn *761 drome, Allegrezza had sustained a com-pensable workplace injury under Mississippi Code Annotated section 71-3-1 (Rev. 2011). The ALJ found that Allegrezza reached MMI on April 2, 1998, and assigned a five percent permanent partial impairment rating to each upper extremity, which amounts to an industrial loss of use of twenty-five weeks per extremity, for a total of fifty weeks. With regard to the lower-back injury, the ALJ found that Al-legrezza sustained a compensable injury on January 22, 1998. However, the ALJ stated that, based on the testimony provided, Allegrezza did not demonstrate a loss of wage earning capacity as a result of the fall and back injury, and thus was entitled to no compensation for this injury.
¶ 23. Based on her findings, the ALJ ordered that Greenville Manufacturing and Travelers provide Allegrezza the following: temporary total disability benefits of $224 for six weeks beginning February 25, 2000; permanent partial disability benefits of $224 for fifty weeks, with credit allowed for benefits previously paid; medical treatment, services, and supplies pursuant to section 71-3-15 for such period as Alle-grezza’s injury and the process of her recovery required, but limited to such charges as prevail in the same community for similar treatment and subject to regulation by the Commission and its fee schedule.
¶ 24. Allegrezza appealed to the full Commission. After a hearing on August 18, 2003, the Commission entered an order affirming the order of the ALJ in part and reversing and rendering in part. Specifically, the Commission affirmed the ALJ?s order on the issue of Allegrezza’s carpal tunnel claims and the issue of psychological overlay, where the ALJ denied Alle-grezza’s motion to amend the petition to controvert. In affirming the ALJ’s order in part, the Commission also determined that sufficient evidence existed showing that Allegrezza was capable of employment despite her injury. However, the Commission reversed the ALJ’s order in part on the back-injury claim, finding that Alle-grezza’s injury resulted in some percentage of loss of wage earning capacity due to restrictions set forth by Dr. Collipp. The Commission determined that Allegrezza was entitled to $67.20 per week for a period of 450 weeks, commencing November 19,1998.
¶ 25. Allegrezza appealed the Commission’s decision to the circuit court. After reviewing the record, the circuit judge affirmed, holding that Allegrezza failed to present evidence to support her claims that the Commission erred in its determination. The circuit judge also found that no evidence of psychiatric complaints existed prior to Allegrezza being released to return to work under the limitations provided by Dr. Collipp.
¶ 26. Allegrezza now appeals, claiming: (1) the Commission failed to apply correct legal standards to her claim; (2) the Commission erred in finding that Allegrezza reached MMI before her back surgery; (3) she is permanently and totally disabled for wage-earning purposes; (4) she is permanently and totally disabled as a result of her back injury; and (5) the Commission erred by failing to consider her psychological overlay claim.
STANDARD OF REVIEW
¶ 27. This Court employs a limited standard of review in a workers’ compensation appeal. We must determine only “whether the decision of the Commission is supported by substantial evidence.” Casino Magic v. Nelson, 958 So.2d 224, 228 (¶ 13) (Miss.Ct.App.2007) (citing Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 447 (¶ 7) (Miss.Ct.App.1999)). “The Commission sits as the ulti *762 mate finder of facts; its findings are subject to normal[,] deferential standards upon review.” Id. (citing Natchez Equip. Co. v. Gibbs, 628 So.2d 270, 273 (Miss.1993)). Because our review is limited, this Court “will only reverse the Commission’s rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious.” Id. (citing Westmoreland, 752 So.2d at 448 (¶ 8)). We maintain this deferential standard of review even if we would have been persuaded to rule otherwise if we had been the fact-finder. Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994).
DISCUSSION
¶ 28. Allegrezza claims that the opinions of the ALJ and the Commission are contrary to the overwhelming weight of the lay and medical evidence presented at the hearing. She contends that the Commission failed to resolve doubt in her favor, but resolved doubt in favor of Greenville Manufacturing on most issues, Allegrezza submits that the Commission erred in determining that Allegrezza reached MMI on April 2, 1998. Allegrez-za claims that she did not reach MMI until after her back surgery on September 9, 1999.
¶ 29. She further asserts that the ALJ and Commission failed to apply the correct legal standard, submitting that the Worker’s Compensation Act must be construed liberally in favor of claimants. See Meridian Prof'l Baseball Club v. Jensen, 828 So.2d 740, 744 (¶ 10) (Miss.2002) (stating that workers’ compensation statutes are to be given “broad and liberal construction,” and doubtful cases should be resolved in favor of compensation).
¶ 30. With regard to workers’ compensation claims, this Court has recognized:
An employer is to pay for medical treatments that are reasonable and necessary and that result from the work-related injury. In addition, there are procedural safeguards involved with the incurring of medical costs. The Workers’ Compensation Act requires that an employer provide medical services to the injured employee commensurate with the “nature of the injury or the process of recovery.” Miss.Code Ann. § 71-3-15(1) (Rev.2000). We summarize this statute’s requirements. An employee may choose a personal physician or accept a physician chosen by the employer. The employer is also responsible for expenses of a physician to whom the claimant is referred by the original treating physician. An employee is allowed referral to one physician practicing “within a specialty or subspecialty area.” Id. Referrals to additional physicians must be approved by either the employer or the employer’s insurance carrier. Treatment rendered by a physician or referrals from a physician other than the original treating physician that have not been approved are not the responsibility of the employer or its insurance carrier.
Wesson v. Fred’s Inc., 811 So.2d 464, 467 (¶ 9) (Miss.Ct.App.2002).
¶ 31. Although Allegrezza attacks the legal standards applied by both the ALJ and Commission, we must recognize that the Commission sits as the ultimate fact-finder. Casino Magic, 958 So.2d at 228 (¶ 13). Additionally, the Mississippi Supreme Court has stated that the Commission may consider medical testimony and lay-witness testimony in deciding the percentage of loss assigned to an injury, and the probative value of any witness’s testimony is determined by the fact-finder. McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 167 (Miss.1991). At the hearing before the ALJ, the ALJ heard testimony *763 from Allegrezza, and the ALJ. considered deposition testimony and affidavits from physicians who treated Allegrezza. Based on the evidence presented, the ALJ[2] found, in the decision affirmed by the Commission, that the treatments provided by Doctors Steuer, Cassada, and Lewis did not constitute reasonable and necessary treatment. Further, the record reflects that Allegrezza failed to seek permission from Greenville Manufacturing or Travelers before receiving treatment from these three physicians. The ALJ thus held (and the Commission affirmed this determinar tion) that the testimony provided by these doctors would not be considered when -determining whether Allegrezza was entitled to compensation.
¶ 32. Allegrezza also argues that the evidence presented at the hearing supports her allegation that, contrary to the Commission’s findings, she was a surgical candidate. Allegrezza contends that the Commission ignored the fact that Dr. Steuer performed discograms on Allegrez-za, which, led to further surgery by Dr. Lewis. Allegrezza argues that undisputed proof exists that she achieved significant improvement from the surgery, which refutes the testimony of the doctors who had opined that the back surgery was not warranted or reasonable and necessary. Alle-grezza submits that all medical testimony is to be considered and weighed appropriately; therefore, the Commission should have considered the testimony of Doctors Steuer, Cassada, and Lewis.
¶ 33. Our review of the record shows that the ALJ also found that with regard to the carpal tunnel claim, Allegrezza sustained a compensable injury pursuant to section 71-3-1. The Commission affirmed this ALJ’s order on this claim. The'ALJ’s order reflected that Allegrezza reached MMI on April 2, 1998, and Allegrezza received a five percent permanent partial impairment rating to each upper extremity. The ALJ noted that this impairment rating required an industrial loss of use of twenty-five weeks per extremity, for a total of fifty weeks. The ALJ thus awarded Allegrezza temporary total disability benefits of $224 for six weeks, beginning February 25, 2000. The ALJ also awarded permanent partial disability benefits of $224 for fifty weeks, with credit allowed for benefits previously paid. As stated, the Commission then affirmed the ALJ’s order in part with regard to the carpal tunnel claim, but the Commission reversed in part regarding Allegrezza’s back injury and ultimately awarded Allegrezza compensation for her back injury.
¶ 34. Regarding Allegrezza’s argument that the Commission erred by failing to consider her psychological overlay claim, the record reveals Allegrezza alleged her claim of psychological overlay based on the diagnosis and treatment of Dr. Cassada. As previously noted, Allegrezza failed to seek permission from Greenville Manufacturing or Travelers to receive treatment from Dr. Cassada. Further, regarding this claim, the ALJ stated that no evidence of psychiatric complaints existed in the record prior to Allegrezza’s release to return to work under the restrictions and limitations provided by Dr. Collipp.
¶ 35. We recognize that for workers’ compensation purposes, treatment rendered by a physician, other than the original treating physician, who has not been approved by the employer or its insurance carrier is not the responsibility of the employer or insurance carrier. See Wesson, 811 So.2d at 467 (¶ 9). Therefore, *764 we find no error in the Commission’s decision to disregard the testimony of Doctors Steuer, Cassada, and Lewis or in the Commission’s decision to affirm the ALJ’s denial of Allegrezza’s motion to amend her petition to claim psychological overlay. The record reflects that Allegrezza failed to provide evidence showing that she sought approval from Greenville Manufacturing or Travelers before undergoing treatment with these doctors.
¶ 36. Additionally, we find the record replete with medical testimony from Allegrezza’s treating physicians. Upon review, we find this testimony supports the circuit court’s decision affirming the Commission’s award of benefits, as well as the finding that Allegrezza reached MMI on April 2, 1998, prior to her back surgery.
¶ 87. Finally, Allegrezza argues that she is permanently and totally disabled for wage earning purposes. Alle-grezza claims that her back injury alone renders her permanently and totally disabled, but she also alleges that the Commission should have found her permanently and totally disabled based on her upper-extremity injuries, even without consideration of the medical reports and doctors’ opinions appearing in the record. Alle-grezza also cites to Foamex Products, Inc. v. Simons, 822 So.2d 1050, 1055 (¶ 19) (Miss.Ct.App.2002), where this Court found that since the claimant suffering from carpal tunnel syndrome suffered the loss of use of a scheduled member, she was entitled to compensation for total loss of use of the member.
¶ 38. Allegrezza also claims that Green-ville Manufacturing failed to rebut her pri-ma facie case proving total disability, and that she was terminated because she could not perform her job. However, the record reflects that Greenville Manufacturing provided no testimony regarding this allegation because the plant had been closed for years prior to the hearing.
¶ 39. Further, we note that the testimony of Menhard, a physical therapist, reflects that he performed an on-site job analysis and opined that with proper safety techniques, Allegrezza could perform all aspects of the job assigned to her by Greenville Manufacturing. As a result, we find substantial credible evidence supports the Commission’s finding that Allegrezza was capable of being employed despite her injury. See Casino Magic, 958 So.2d at 228 (¶ 13). We thus affirm the circuit court’s judgment affirming the Commission’s order regarding the award of compensation for Allegrezza’s back injury and carpal tunnel injury, as well as regarding her loss of wage earning capacity.
¶ 40. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. The record reflects that at the hearing before the ALJ on May 14, 2002, all medical testimony from the doctors who treated Alle-grezza was provided via deposition or by affidavit.

. As noted previously, the Commission affirmed the ALJ’s order in part on Allegrezza’s carpal tunnel and psychological overlay claims. The Commission failed to make any additional factual findings in its order regarding these claims.