# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-WC-01214-COA

### CONSOLIDATED WITH

## NO. 2010-CT-01516-COA

### CONSOLIDATED WITH

## NO. 2014-CT-00342-SCT

| | |
|---|---|
| **CARDIE B. BLACKWELL** | **APPELLANT/CROSS-APPELLEE** |
| v. | |
| **HOWARD INDUSTRIES, INC.** | **APPELLEE/CROSS-APPELLANT** |

| | |
|---|---|
| DATE OF JUDGMENT: | 07/20/2016 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | WILLIAM H. JONES |
| ATTORNEY FOR APPELLEE: | PARKER FORD LEGGETT |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED - 01/30/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND WESTBROOKS, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1. Cardie Blackwell appeals the decision of the Jones County Circuit Court affirming the Workers' Compensation Commission's (Commission) decision, denying him total disability

benefits. He cites four alleged instances of error.[1] Howard Industries Incorporated (Howard) cross-appeals, citing six errors alleged to have been committed by the Commission.[2]

¶2. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY

¶3. The procedural history in this case is extensive, as it stems from a claim that arose on May 22, 2002, when Cardie sustained a work-related injury to his left elbow. Since this case is now on its third appeal to this Court, and the record has been consolidated, we adopt the facts from this Court's most recent opinion in *Blackwell v. Howard Indus. Inc.*, 210 So. 3d 1018, 1020 (¶¶2-6) (Miss. Ct. App. 2015) (vacated by order on other grounds relating to jurisdiction) (internal quotations omitted):

> [Cardie] was working for Howard . . . when he sustained a work-related injury to his left elbow. He received temporary-total-disability benefits, and Howard paid for [Cardie]'s surgical procedure. After a disagreement regarding his treatment, [Cardie] filed a petition to controvert. [Cardie] and Howard exchanged volleys of pleadings and motions between 2003 and 2007.
>
> The administrative judge (AJ) found that [Cardie] was not entitled to permanent and total disability benefits [because he failed to participate in reasonable/necessary medical treatment]. [Cardie] appealed, and the full Commission affirmed the AJ's judgment. In October 2009, [Cardie] appealed to the circuit court. Howard successfully moved to dismiss [Cardie's] appeal because he never filed a brief with the circuit court. The circuit court issued a deficiency notice and gave [Cardie] fourteen days to file a brief. After

---

[1] On December 1, 2016, the Mississippi Supreme Court granted Howard's motion to consolidate the record in the instant appeal with the appellate records in *Blackwell v. Howard Indus.*, 2010-CT-01516-COA; and *Blackwell v. Howard Indus.*, 2014-CT-00342-SCT. Cardie did not object to Howard's motion.

[2] For clarity, the parties' issues have been restructured and addressed below.

2

[Cardie] filed a brief that did not conform to Rule 28(a) of the Mississippi Rules of Appellate Procedure, Howard successfully moved to dismiss [Cardie's] appeal.

[Cardie] appealed to this Court, and we held that a second notice of deficiency should have been sent to [Cardie] and that lesser sanctions, rather than dismissal, would have been appropriate. *Blackwell v. Howard Indus. Inc.*, 98 So. 3d 463, 465 (¶6) (Miss. Ct. App. 2012). Consequently, we reversed the circuit court's judgment and remanded the case for further proceedings. *Id*.

On remand, Howard filed a motion to strike [Cardie's] briefs. According to Howard, [Cardie's] briefs failed to comply with Rule 11 of the Mississippi Workers' Compensation Commission's Procedural Rules. Howard also moved to strike [Cardie's] reference to an internet article on the basis that it was inadmissible hearsay and irrelevant, it lacked a proper foundation, and it could not be authenticated.

The circuit court agreed with both of Howard's claims. In its order, the circuit court found that [Cardie's] notice of appeal did not reference the issues that [Cardie] raised in his brief. The circuit court granted Howard's motion to strike [Cardie's] briefs. In addition to the internet article that Howard moved to strike, the circuit court struck four other internet articles and texts that [Cardie] attached as exhibits to his reply brief. After the circuit court struck [Cardie's] briefs and five articles that were attached as exhibits, [Cardie] appealed to this Court.

¶4.     After review, this Court held that the circuit court clearly erred when it struck Cardie's briefs and dismissed his appeal on the basis that his notice of appeal inadequately set forth the grounds of his appeal. We therefore reversed the circuit court's judgment and remanded the matter for further proceedings. *Blackwell*, 210 So. 3d at 1019 (¶1). However, the Mississippi Supreme Court granted Howard's petition for a writ of certiorari and, by order filed May 12, 2016, found that "the order from which [Cardie] appealed was not a final judgment on the merits of the case[,] and [Cardie's] appeal therefrom [was] interlocutory in

nature." *Blackwell v. Howard Indus.*, No. 2014-CT-00342-SCT (Miss. May 12, 2016) (order dismissing appeal). The supreme court dismissed the appeal, vacated the opinion of this Court, and remanded the case to the circuit court "for proceedings consistent with the instant order." *Id*.

¶5. On remand, Cardie filed a motion for reconsideration with the circuit court, which the circuit court granted on June 24, 2016. In its order, the circuit court, noting that Cardie had elected to stand on his previously filed brief, granted Howard twenty days to submit a supporting brief on the merits of the case. Howard also elected to stand on its previously filed brief. On July 20, 2016, the circuit court issued its order affirming the decision of the Commission. Cardie now appeals from that order.

## DISCUSSION

¶6. Appellate review of workers' compensation claims is a narrow one. The standard of review utilized by this Court when considering an appeal of a decision of the . . . Commission is well settled. The Mississippi Supreme Court has stated that the findings and order of the . . . Commission are binding on this Court so long as they are supported by substantial evidence.

Under settled precedent, courts may not hear evidence in compensation cases. Rather, their scope of review is limited to a determination of whether or not the decision of the [C]ommission is supported by the substantial evidence. If so, the decision of the [C]ommission should be upheld. The circuit courts act as intermediate courts of appeal. The Supreme Court, as the circuit courts, acts as a court of review and is prohibited from hearing evidence or otherwise evaluating evidence and determining facts; [w]hile appeals to the Supreme Court are technically from the decision of the [c]ircuit [c]ourt, the decision of the [C]ommission is that which is actually under review for all practical purposes.

As stated, the substantial evidence rule serves as the basis for appellate review

4

of the [C]ommission's order. Indeed, the substantial evidence rule in workers' compensation cases is well established in our law. Substantial evidence, though not easily defined, means something more than a mere scintilla of evidence, and that it does not rise to the level of a preponderance of the evidence. It may be said that it means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred.

*Toldson v. Anderson-Tully Co.*, 724 So. 2d 399, 401-02 (¶10) (Miss. Ct. App. 1998).

### I. Cardie's Statement of the Issues

#### A. Reasonable and Necessary Medical Care and Treatment

¶7. Cardie raises three issues: "Whether [he] had a right to choose his physician and by doing so had the right to follow the care recommended by that physician as opposed to an alternative method of care urged by Howard"; "Whether substantial evidence existed to support a finding, by the AJ and the Commission, that [he] did not participate in reasonable and necessary medical care and treatment"; and "Whether evidence existed that [his] refusal . . . to participate in a form of treatment and therapy different from that of the treating physician[] 'impacted' his condition[.]"

¶8. The polestar question is: Did Cardie's preferred method of treatment and the testimony of his preferred medical professional supersede the recommendations by other physicians who treated him? He was treated by multiple physicians in addition to the physician that he preferred, Dr. David McKellar, who continued his pain management in lieu of physical therapy.

With regard to workers' compensation claims, this Court has recognized: An

5

employer is to pay for medical treatments that are reasonable and necessary and that result from the work-related injury. In addition, there are procedural safeguards involved with the incurring of medical costs. The Workers' Compensation Act requires that an employer provide medical services to the injured employee commensurate with the nature of the injury or the process of recovery. Miss. Code Ann. § 71-3-15(1) (Rev. 2000). We summarize this statute's requirements. An employee may choose a personal physician or accept a physician chosen by the employer. The employer is also responsible for expenses of a physician to whom the claimant is referred by the original treating physician. An employee is allowed referral to one physician practicing within a specialty or subspecialty area. Referrals to additional physicians must be approved by either the employer or the employer's insurance carrier. Treatment rendered by a physician or referrals from a physician other than the original treating physician that have not been approved are not the responsibility of the employer or its insurance carrier.

*Allegrezza v. Greenville Mfg. Co.*, 122 So. 3d 755, 762 (¶30) (Miss. Ct. App. 2012), *aff'd*, 122 So. 3d 719 (Miss. 2013). Cardie argues that he had a right to choose the doctor and treatment that he felt was best suited for his situation. He contends that the pain-management treatments administered and prescribed by Dr. McKellar were more beneficial and caused him to be less stressed and depressed than the pain associated with physical-therapy sessions. He further contends that Dr. McKellar was his primary doctor, and, therefore, his determination regarding the course of treatment should carry more weight than the recommendations of the other treating doctors who spent less time with him.

¶9. Howard responds that Cardie's condition would have likely improved had he been diligent in attending physical-therapy sessions and following through with the programs recommended by the other doctors who treated him, as opposed to following the pain-management regimen administered by Dr. McKellar. Howard points out that Cardie missed

6

at least fourteen therapy sessions and was not performing the exercises at home, as he had been instructed to do.

¶10.    In this instance, we find the Commission was correct in its analysis of the conflicting medical testimony. As Howard points out, this Court has held that

> while a treating physician's opinion is without question of great import, the Commission is not required to abide by it or required to give it any greater weight than other physicians' opinions. It is the sole responsibility of the Commission to determine the credibility of the witnesses before it and, when conflicts in credible evidence arise, to determine where the preponderance of the evidence lies. Regardless of whether the Commission makes the decision to rule in line with a treating physician's opinion, we must affirm its decision so long as it is supported by substantial evidence.

*Richardson v. Johnson Elec. Auto. Inc.*, 962 So. 2d 146, 152 (¶16) (Miss. Ct. App. 2007). The record indicates that Cardie received varying levels of treatment, evaluation, and medical-records reviews from at least fifteen different physicians from a range of specialties and disciplines. Of those physicians, Dr. Jeffery Summers,[3] Dr. Michael Manning,[4] Dr. Rocco Barbieri, Dr. Richard Morse,[5] Dr. Robert McGuire, and Dr. Michael Stanton-Hicks

---

[3] Dr. Summers is a board-certified anaesthesiologist and a board-certified pain-management specialist. It was stipulated that he was an expert in both fields during his deposition.

[4] Dr. Manning was an anesthesiologist at St. Dominics Hospital. According to the record, he did not personally treat Cardie.

[5] Dr. Morse is board certified by the American Board of Psychiatrists and Neurology. He is also board certified by the American Board of Pain Medicine.

all agreed that the best form of treatment would have been physical therapy.[6] Even with the installation of the stimulator, therapy would still have been necessary. Dr. McKellar, Cardie's treating physician, a board-certified anesthesiologist, thought otherwise. As we have already noted, each of the other doctors who treated Cardie concluded that the best form of treatment was physical therapy. Nevertheless, for the sake of completeness and to highlight the evidence that the Commission had before it, we summarize each physician's recommendation:

> Dr. Summers: In Dr. Summer's October 15, 2002 evaluation he stated: "[Cardie] clearly needs to use his arm more, before contractures and other problems develop. . . . At this point, I feel that the single best treatment is going to be mobilization of his extremity." He also concluded that Cardie did not suffer from Reflex Sympathetic Dystrophy (RSD) based on his examination. During his deposition—when asked whether or not Cardie should have seen a physical rehabilitation specialist—he reiterated that "therapy would be probably the cornerstone for [the] entire treatment." He also recommended that Cardie see a physical rehabilitation specialist to get a therapy program he could do locally.
>
> Dr. Manning: Dr. Manning agreed with Dr. Summer's assessment—that Cardie should have been "seen by a physical rehab specialist before proceeding with the stimulator." He also noted that "the primary goal of treatment should be mobilization of the affected extremity." He further stated that, in his opinion, "the management of this case has been most unusual. Dr. McKellar has performed multiple procedures 3 to 4 weeks apart without ongoing physical therapy which should be the mainstay of treatment." His final recommendation was that Cardie "be evaluated by a physical rehab specialist." He also recommended "denying further pain procedures until [the] evaluation [was] done." Based on his review of Cardie's records, he opined

---

[6] The record indicates that Cardie was also treated by, evaluated by, or had his records reviewed by Doctors Graeber, Wegener, Ramsey, Geissler, Nowicki, Willoughby, Morris, and Lee.

that the "consensus opinion" was for "aggressive mobilization of the affected extremity."

Dr. Barbieri: Cardie first saw Dr. Barbieri on August 7, 2002, and, based on his patient notes, he concluded that: "At this point in time, . . . I would like to start off by getting him started on therapy, placing him on Elavil to help some of his neurologic symptoms, and seeing if we can get him to a therapist to work on his aggressive range of motion."

Dr. Morse: According to his deposition, Dr. Morse, of the Touro Pain Clinic, recommended that Cardie commit to a full program of treatment at the facility, which included an emphasis on physical therapy and tapering of narcotics. He also testified that aggressive physical therapy would have been an "integral part of the program." He further testified—when asked why physical therapy is important in the early stage—that it was needed "[t]o preserve the movement and strength of the extremities so it does not go into the later stage of contracture. It also keeps it from spreading."

Dr. McGuire: Dr. McGuire is a specialist in traumatic and reconstructive spinal surgery. In his independent medical examination, dated November 17, 2003, he reviewed the records of Dr. Manning, Dr. Summers, Dr. Morris, Dr. McKellar, Dr. Wegener, Dr. Graeber, Dr. Willoughby, and Dr. Barbieri. He found that Cardie suffered from RSD and that a dorsal column stimulator was warranted. He also found that Cardie needed to have a "vigorous physical therapy regimen." Dr. McGuire added that, "[i]n addition to the dorsal column stimulator, he [would] also need continued medical management while . . . undergoing the physical rehabilitation. . . ."

Dr. Michael Stanton-Hicks: Dr. Stanton-Hicks is a specialist in RSD syndrome and the treatment and diagnosis thereof. Although Dr. Hicks did not personally treat Cardie, he gave his opinion at the behest of Dr. Summers—who believed Cardie did not have RSD. Even evaluating under the assumption that Cardie did have RSD, he recommended aggressive physical therapy following the installation of the temporary stimulator.

¶11. "The Commission serves as the ultimate fact finder in addressing conflicts in medical testimony and opinion[s]." *Hopper v. Krevinec*, 25 So. 3d 1112, 1115 (¶13) (Miss. Ct. App. 2010) (quoting *Raytheon Aerospace Support Servs. v. Miller*, 861 So. 2d 330, 336 (¶13)

9

(Miss. 2003)). As such, we look to the Commission's findings when deciding whether Cardie participated in reasonable and necessary medical care and treatment. "Where medical expert testimony is concerned, the supreme court has held that whenever the expert evidence is conflicting, the [c]ourt will affirm the Commission whether the award is for or against the claimant." *Id.* (quoting *Kersh v. Greenville Sheet Metal Works*, 192 So. 2d 266, 268 (Miss. 1966)).

¶12. The caveat to this rule is that the testimony is still required to be supported by substantial evidence, as expressed in *Guy v. B.C. Rogers Processors Inc.*, 16 So. 3d 29, 35 (¶¶21-24) (Miss. Ct. App. 2008). Based on the determinations of the various physicians, whose recommendations are discussed earlier in this opinion, we find substantial evidence to support the Commission's ultimate finding that Cardie's failure to complete the physical therapy and that "impacted his condition." Consequently, the Commission correctly determined that Cardie's failure to participate steadfastly in physical therapy robbed him of entitlement to total disability benefits. This issue is without merit.

### B. Pretrial Stipulations

¶13. Cardie alleged that he twisted his left elbow on or about May 23, 2002. The claim was accepted by Howard, and it was stipulated that Cardie injured only his elbow. Cardie argues that the AJ was not free to ignore that Howard had stipulated he had reached maximum medical improvement on August 5, 2005, and that the injury was to his left elbow. Howard argues that it moved to withdraw its stipulation—that an injury occurred to Cardie's

10

elbow—and never stipulated that any injury went beyond an injury to the elbow. Howard further argues that the Commission erred by not withdrawing the stipulation because Howard now believes that Cardie was never injured. We find that, despite Cardie's complaints, there is no indication in the record that the Commission considered or allowed the stipulation to be withdrawn. Since the stipulation was never withdrawn, this argument is moot.

      II.     *Howard's Statement of the Issues on Cross-Appeal*

¶14. Howard argues that the following issues were not addressed by the circuit court or the Commission, but the circuit court still, in error, upheld the Commission's ruling in its entirety.

> A.    *The Commission erred in finding [Cardie] suffered a work[-]related injury to his left elbow[, and its decision] was not supported by substantial evidence.*
>
> B.    *The Commission erred in finding [Cardie] suffered a work[-]related injury to his left upper extremity beyond that of an injury to his left elbow[, and its decision] was not supported by substantial evidence.*

¶15. The parties stipulated that Cardie sustained a work-related injury to his elbow on May 23, 2002. According to Howard, at the May 2008 hearing, it moved that its stipulation—that Cardie suffered a compensable work-related injury to his left elbow—be withdrawn. As stated, there is no indication that this stipulation was withdrawn, and in fact, it was included in the AJ's final order. Despite Howard's arguments on cross-appeal, the record does not reflect that the issue of whether Cardie had suffered a work-related injury was a contested issue in the proceedings before the Commission.

¶16.    As to Howard's contention that the Commission erred in finding that Cardie suffered a work-related injury to his left upper extremity beyond that of an injury to his left elbow, it is sufficient to reiterate again that "[t]he Commission serves as the ultimate fact finder in addressing conflicts in medical testimony and opinion[s]." *Krevinec*, 25 So. 3d at 1115 (¶13). We note, as did the circuit court, that, according to Cardie's doctors at the Touro Clinic, Cardie "appeared to suffer atrophy in most of the musculature of the hand and forearm. The doctors also indicated that they did "not have the slightest doubt that [Cardie had] RSD above and beyond any neuritis in the upper extremity." We find that the Commission's decision is supported by substantial evidence; this issue is without merit.

> C.    *The Commission erred in not making an affirmative finding that [Cardie] misrepresented that he was doing physical therapy at home at [the] motion hearing occurring in April of 2003 before Judge Mounger [after which] Judge Mounger entered her [o]rder of June 3, 2003, and [in] not making an affirmative finding [that] he misrepresented his condition throughout these proceedings.*

¶17.    This issue is addressed below in conjunction with issue E.

> D.    *The Commission erred in concluding that future epidural injections, stellate ganglion blocks[,] and spinal stimulators might be considered in the future under such circumstances as outlined by the Commission. The Commission further erred in not making an affirmative finding that past epidural steroid injections, stellate ganglion blocks[,] and spinal stimulators were neither reasonable nor necessary.*

¶18.    Howard argues that its responsibility to provide spinal stimulators, epidural injections, and stellate ganglion blocks should have ended when Cardie refused his doctor's orders

12

regarding physical therapy, as it contends that none of these treatments were reasonable or necessary without concurrent physical therapy. *See Moffett v. Howard Indus. Inc*., 976 So. 2d 910, 914 (¶9) (Miss. Ct. App. 2007); *Bridgeman v. N. Am. Plastics Inc*., 769 So. 2d 236, 241 (¶14) (Miss. Ct. App. 2000).

¶19. Cardie responds that Howard did not object or seek to suspend the payment of benefits to him during the time period he refused physical therapy, as it would have been permitted under Mississippi Code Annotated section 71-3-15(1) (Rev. 2011).[7] Cardie also alleges that Howard did not object to paying Dr. McKellar from 2002 to 2007 for treatment of his RSD symptoms and did not complain that Cardie was not undergoing physical therapy. He argues that the treatments by Dr. McKellar were necessary because the pain associated with physical-therapy treatments was intolerable. He asserts that he had a right to refuse the treatment. The AJ stated that:

> Dr. McKellar and the reasonableness and necessity of these treatments which a treating physician has already performed will not be subject to discussion. However, as to future epidural injections, stellate ganglion blocks[,] and spinal

---

[7] Section 71-3-15(1) provides:

The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require. The injured employee shall have the right to accept the services furnished by the employer or, in his discretion, to select one (1) competent physician of his choosing and such other specialists to whom he is referred by his chosen physician to administer medical treatment. Referrals by the chosen physician shall be limited to one (1) physician within a specialty or subspecialty area.

13

stimulators, it is the opinion of the undersigned, based on the medical opinion of Dr. Jeffrey Summers, bolstered by the opinion of Dr. Stanton-Hicks[,] that only after other medical treatment has been completed[,] . . . will a stimulator be considered.

This Court cannot say that the Commission's decision lacked substantial evidence or was clearly erroneous in upholding the decision of the AJ.

> E. *The Commission erred in not assessing penalties against [Cardie].*

¶20. Howard argues that, based on the misrepresentations made by Cardie, a penalty should have been assessed pursuant to Mississippi Code Annotated section 71-3-59 (Rev. 2011).[8] Among those misrepresentations alleged were Cardie's assertions that he performed physical-therapy treatments at home and his complaints about the extent of his condition, despite medical testimony to the contrary. Cardie responds that if any misrepresentations were made, they were made by his counsel. Moreover, he argues that he would have been justified in not doing physical therapy at home because of its harmful and dangerous effects. It is not clear from the record whether any impeachment testimony existed. As the AJ noted, "[a]lthough there are inferences throughout the medical records of possible misrepresentation, the weight of the evidence does not substantiate this fact." Ultimately, the AJ found that, "[t]his is not an appropriate case for penalties or interest." We find that the decision to not assess

---

[8] "If the court having jurisdiction of proceedings in respect of any claim or compensation order determined that the proceedings . . . have been instituted or continued without reasonable ground, the costs of such proceedings shall be assessed against the party who has so instituted or continued such proceedings." Miss. Code Ann. § 71-3-59.

14

penalties was supported by substantial evidence; therefore, this issue without merit.

> F. *[Cardie's] brief and internet articles should be stricken as a violation of [Mississippi Workers' Compensation Commission] Procedural Rule 11.*

¶21. Mississippi Workers' Compensation Procedural Rule 11, entitled "Appeal from Commission Award," states in part as follows:

> Should either party desire to appeal from an award of the Commission, the party desiring to appeal within thirty (30) days of the date of the award will file a notice of appeal with the Secretary of the Commission. The notice shall set out the style of the case, **the grounds upon which the appeal is taken**, and certification that copies of the notice of appeal have been filed with the opposing parties.

(Emphasis added). Howard argues that Cardie's brief does not address the grounds upon which his appeal was taken, as set forth in his notice of appeal and corrected notice of appeal filed with the Commission. Therefore, according to Howard, Cardie's brief should be stricken. Howard also contends that Cardie submitted Internet articles among the papers of his record excerpts and that the articles should be stricken.

¶22. The record reflects that the corrected notice of appeal that Cardie filed with the Commission pursuant to Rule 11 states in pertinent part:

> The Administrative Law Judge issued a decision [that] contained numerous mistakes of fact and errors in application of controlling law, which order was subsequently affirmed by the Full Commission. The Commission considered inadmissible evidence from Dr. Jeffrey Summers, which was based on insufficient factual data and included hearsay, which was admitted in violation of *Daubert*[9] and the Mississippi Rules of Evidence.

---

[9] *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 596 (1993).

Addressing first the issue regarding Cardie's record excerpts containing articles from the Internet, we note that the articles were not submitted in the proceedings before the Commission. As such, they cannot be, and have not been, considered by this Court in arriving at our decision in this matter. We also note that, for the same reason, the circuit court did not consider the articles in reaching its decision to affirm the Commission.

¶23. As to Howard's contention that Cardie's briefs—which were submitted to both the circuit court and this Court—should be stricken because they address issues not contained in the notice of appeal that he filed with the Commission, suffice it to say that we do not read the notice of appeal so narrowly. While we agree that the notice does not state with specificity the "numerous mistakes of fact and errors in [the] application of controlling law" alleged to have been committed by the Commission, neither Rule 11 nor any other rule of which we are aware requires such specificity in the notice of appeal. We also note that even if there were noncompliance, and we are not saying that there was, Rule 11 is silent at to the remedy for noncompliance. Howard does not contend that it was somehow blindsided by the lack of specificity in the notice of appeal and, therefore, was unable to properly respond to the issues raised by Cardie. Indeed it cannot make such claim, because before it filed its brief with the circuit court, it had been presented with a copy of Cardie's brief, wherein Cardie set forth essentially the same issues as are presented in this appeal. The best that can be said of Howard's argument is that it exhorts form over substance. We decline to do the same. For the reasons discussed, we find no basis for disturbing the decision of the Commission as

16

affirmed by the circuit court.

¶24.    **ON DIRECT APPEAL: AFFIRMED.  ON CROSS-APPEAL: AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**